# Illinois Official Reports

## Supreme Court

*Carney v. Union Pacific R.R. Co.*, 2016 IL 118984

| | |
|---|---|
| Caption in Supreme Court: | PATRICK JOSEPH CARNEY, Appellee, v. UNION PACIFIC RAILROAD COMPANY, Appellant. |
| Docket No. | 118984 |
| Filed<br>Rehearing denied | October 20, 2016<br>January 23, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Randye A. Kogan, Judge, presiding. |
| Judgment | Appellate court judgment reversed; circuit court judgment affirmed. |
| Counsel on Appeal | Hugh C. Griffin, of Hall Prangle & Schoonveld, LLC, of Chicago, and George H. Brant, of Judge, James & Kujawa, LLC, of Park Ridge, for appellant.<br><br>Michael W. Rathsack and Mark E. McNabola, of Chicago, for appellee.<br><br>Andrew J. Martone and Adam C. Doerr, of Hesse Martone, P.C., of St. Louis, Missouri, for *amicus curiae* Associated General Contractors of Illinois. |

Cassidy & Mueller P.C., of Peoria (David B. Mueller, Brian A. Metcalf and Caroline J. Cassidy, of counsel), for *amici curiae* Illinois Chamber of Commerce *et al*.

Robert E. Elworth, Jessica L. Galanos and Brian D. Lee, of HeplerBroom, LLC, of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Kirsten M. Dunne, of Goldberg Weisman Cairo, of Chicago, for *amicus curiae* Illinois Trial Lawyers' Association.

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Karmeier, and Burke concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion.

Justice Kilbride dissented upon denial of rehearing.

## OPINION

¶ 1 Plaintiff, Patrick Joseph Carney, filed a negligence action in the Circuit Court of Cook County against defendant, Union Pacific Railroad Company, after he suffered severe personal injuries during the removal of an abandoned railroad bridge in Chicago. The circuit court granted defendant summary judgment. The appellate court held that fact issues precluded summary judgment and reversed the circuit court's judgment and remanded for further proceedings. 2014 IL App (1st) 130105-U.

¶ 2 For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 3                          BACKGROUND

¶ 4 The record discloses the following undisputed facts. In the spring of 2006, defendant invited various contractors to submit bids in connection with the purchase and removal of three abandoned railroad bridges that spanned Arthington, Polk, and Lexington Streets in Chicago. Among those invited to bid was Happ's, Inc., a scrap contractor that had worked with defendant and other railroads for 25 years recycling steel and railroad ties.

¶ 5 Before submitting a bid, company president Steven Happ contacted Patrick Leo Carney, owner of Carney Group, Inc., which does business as Chicago Explosive Services. Happ and Carney had a 20-year business relationship, and Happ had frequently enlisted Carney's assistance for bridge removal jobs. Carney attended the on-site pre-bid meeting with Happ, and the two came to some agreement as to Carney Group's involvement in the bridge removals should defendant accept the bid from Happ's. As they had in the past, Happ and Carney had a handshake agreement.

¶ 6        Defendant ultimately accepted the bid from Happ's, and on July 19, 2006, defendant and Happ's entered into a "Purchase and Removal Agreement." Under the agreement, Happ's, which was identified as an independent contractor, purchased the three bridges from defendant and agreed to provide all the labor, tools, and material necessary for the bridge removals. Defendant was unaware of the agreement between Happ's and Carney Group.

¶ 7        The dismantling and removal of the Arthington Street bridge proceeded without incident, and work commenced on the Polk Street bridge. Although all three bridges were of the same "through-plate steel girder" design, the Polk Street bridge was by far the largest of the three. To remove that bridge, Happ's first removed the rails and ties. Thereafter, workers from Happ's and Carney Group removed the steel crossbeams that connected the bridge's east and west horizontal girders (the bridge walls), along with the steel deck or floor plate that the crossbeams supported. A few crossbeams at the north and south ends of the bridge were left intact for support.

¶ 8        On July 31, 2006, Carney called plaintiff, his son, to the job site to help thread four steel cables through holes that had been torched in the bridge's east girder. The cables, in turn, were attached to a spread bar on a crane supplied by Gatwood Crane Services. A worker from Carney Group then made the cuts that severed the connections between the remaining crossbeams and the east girder so that the crane could lift the girder and lower it onto Polk Street. When the crane operator attempted to lift the east girder, only the south end would lift. A crossbeam on the north end of the bridge was "pinched" against the east girder preventing the north end of that girder from lifting. While a worker made an additional cut in the crossbeam to free it, the crossbeam snapped, and the west girder, which was not secured or supported, fell to the east. At the time, plaintiff was standing north of the bridge on a gravel-covered steel plate.[1] When the west girder fell, the steel plate moved up, and plaintiff slid forward under the west girder. Plaintiff's legs were severed below his knees.

¶ 9        The dismantling and removal of the Polk Street bridge was completed without further incident under the direction of the Occupational Safety and Health Administration. As to the Lexington Street bridge, Happ's hired another contractor, DMD Services, to remove it.

¶ 10       On August 8, 2007, plaintiff filed a complaint against Happ's, which plaintiff amended shortly thereafter to add defendant, Union Pacific Railroad. Various third-party claims and counterclaims were filed. All claims were settled with the exception of plaintiff's claim against defendant. In his "revised second amended complaint at law" (hereinafter, the complaint), plaintiff alleged that defendant was negligent in failing to discover and disclose to Happ's or plaintiff the presence of the "planking," i.e., the steel plate at the north end of the bridge. Plaintiff further alleged that defendant retained control over the work and safety of the demolition project but negligently failed to develop a demolition plan and to supervise the work. Finally, plaintiff alleged that defendant was negligent in hiring Happ's.

¶ 11       Defendant filed a motion for summary judgment, which the trial court granted. Plaintiff appealed, and the appellate court reversed and remanded. 2014 IL App (1st) 130105-U.

¶ 12       The appellate court held that although an employer is typically not liable for acts of an independent contractor, an exception exists where the employer " 'retains the control of any

_____

[1]Defendant refers to this plate as the "north end floor plate." Plaintiff refers to it as a "bridge transition plate."

part of the work' " (emphasis omitted) (*id.* ¶ 23 (quoting Restatement (Second) of Torts § 414 (1965))), and that a genuine issue of material fact exists as to whether defendant retained such control over the work performed by Happ's to become vicariously or directly liable to plaintiff (*id.* ¶ 32).

¶ 13    As to plaintiff's negligent hiring claim, the appellate court recognized that " '[a]n employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor' " (*id.* ¶ 37 (quoting Restatement (Second) of Torts § 411 (1965))) and agreed with the trial court that a fact issue exists as to whether defendant exercised reasonable care in selecting Happ's (*id.* ¶ 38). Although the trial court found that plaintiff was not a "third person" to whom liability for negligent hiring would extend, the appellate court declined to reach that issue, holding that a fact issue exists as to whether plaintiff was an employee of Carney Group at the time of the accident or whether he was simply "hanging around." *Id.* ¶ 40.

¶ 14    Finally, the appellate court considered plaintiff's claim that defendant was liable as a possessor of land for injury to plaintiff by failing to warn about a dangerous condition on defendant's land, namely, the steel floor plate on which plaintiff was standing at the time of the accident. *Id.* ¶¶ 42-43 (citing Restatement (Second) Torts § 343 (1965)). The appellate court held that a genuine issue of fact exists as to whether defendant should have known that workers would fail to discover how far the floor plate extended. *Id.* ¶ 46.

¶ 15    We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015). We also allowed the following groups to file *amicus curiae* briefs in support of defendant's position: the Illinois Chamber of Commerce, Illinois Construction Industry Committee, and Associated Builders and Contractors; the Associated General Contractors of Illinois; and the Illinois Association of Defense Trial Counsel. We further allowed the Illinois Trial Lawyers' Association to file an *amicus curiae* brief in support of plaintiff's position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 16                                    ANALYSIS
¶ 17                                         I
¶ 18    We first consider plaintiff's request that we dismiss this appeal as improvidently granted.
¶ 19    Grounds typically advanced for dismissal of an appeal once taken include the following: (1) the underlying judgment is not a final judgment (*Phelps v. Elgin, Joliet & Eastern Ry. Co.*, 28 Ill. 2d 275, 279 (1963); *Wilkey v. Illinois Racing Board*, 96 Ill. 2d 245, 251 (1983)); (2) the issues have become moot (*In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005)); and (3) the petition for leave to appeal was not timely filed (*Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 497 (2002)). Plaintiff does not rely on any of these grounds for dismissal of this appeal. Instead, he contends that this case falls outside the "commonly accepted grounds" for review by this court. Plaintiff explains that because the underlying facts are disputed, we will not be able to establish bright-line rules of general applicability. Plaintiff further explains that, contrary to defendant's position, no conflict exists between the appellate court decision here and other appellate court decisions involving construction-related negligence claims.

¶ 20    Where, as here, the case is not appealable as a matter of right, Rule 315(a) governs review by this court. Ill. S. Ct. R. 315(a) (eff. Jan. 1, 2015). Under this rule, whether a petition for

- 4 -

leave to appeal will be granted "is a matter of sound judicial discretion." *Id.* Rule 315 further provides:

"The following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons which will be considered: the general importance of the question presented; the existence of a conflict between the decision sought to be reviewed and a decision of the Supreme Court, or of another division of the Appellate Court; the need for the exercise of the Supreme Court's supervisory authority; and the final or interlocutory character of the judgment sought to be reviewed." *Id.*

¶ 21 This court, exercising its judicial discretion, initially denied defendant's petition for leave to appeal. Defendant was granted leave to file a motion to reconsider that denial. On reconsideration, defendant's petition garnered the necessary votes to proceed. We are not inclined to again reconsider our decision simply because, as plaintiff argues, the facts are disputed. We were well aware at the time we considered and reconsidered defendant's petition that the facts might be in dispute. The appellate court, after all, had held that genuine issues of material fact precluded summary judgment. 2014 IL App (1st) 130105-U, ¶ 1.

¶ 22 We are also not inclined to reconsider our decision because, according to plaintiff, a conflict in appellate decisions, on which defendant relied in its reconsideration motion, does not really exist. Although the existence of a conflict between the decision sought to be reviewed and a decision of another division of the appellate court is an adequate basis for review under Rule 315, it is not a necessary one.

¶ 23 Having twice exercised our judicial discretion as to whether the issues raised in defendant's petition warrant the attention of this court and having concluded that they do, we decline to dismiss the appeal as improvidently granted. We thus turn to the merits of defendant's appeal.

¶ 24                                                      II

¶ 25 Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). In determining whether a genuine issue of material fact exists, we construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. A genuine issue of material fact exists "where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* We review summary judgment rulings *de novo*. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13.

¶ 26 Where, as here, the plaintiff seeks recovery based on the defendant's alleged negligence, the plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach. *Id.* ¶ 12. Whether a duty exists is a question of law appropriate for summary judgment. *Id.* ¶ 13. " 'In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper.' " *Id.* (quoting *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991)).

¶ 27    The duty inquiry focuses on "whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff." *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). The term "relationship" is a shorthand description for the sum of the following factors: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18.

¶ 28    Here, plaintiff has alleged three theories under which he claims defendant owed him a duty of reasonable care. Although plaintiff did not specifically cite the Restatement (Second) of Torts in his complaint, defendant does not dispute that plaintiff has effectively invoked three sections of the Restatement: section 414 ("Negligence in Exercising Control Retained by Employer"); section 411 ("Negligence in Selection of Contractor"); and section 343 ("Dangerous Conditions Known to or Discoverable by Possessor"). Restatement (Second) of Torts §¶ 343, 411, 414 (1965). We consider each in turn.

¶ 29                              *Section 414—Retained Control*

¶ 30    Beginning in 1907 and continuing for over eight decades, construction-related personal injury claims were analyzed under the provisions of the Structural Work Act (Act) (740 ILCS 150/1 *et seq.* (West 1994)). The Act coexisted with common-law negligence principles. *Calderon v. Residential Homes of America, Inc.*, 381 Ill. App. 3d 333, 340 n.2 (2008); *Bokodi v. Foster Wheeler Robbins, Inc.*, 312 Ill. App. 3d 1051, 1057-58 (2000). After the General Assembly's repeal of the Act in 1995 (Pub. Act 89-2, § 5 (eff. Feb. 14, 1995)), plaintiffs looked to the common law, particularly as compiled in the Restatement (Second) of Torts, to pursue claims for construction-related negligence. *Bokodi*, 312 Ill. App. 3d at 1057-58; see also Peter Puchalski, *Illinois Construction Negligence, Post-Structural Work Act: The Need for a Clear Legislative Mandate*, 36 J. Marshall L. Rev. 531, 540 (2003).

¶ 31    Under the common law, one who employs an independent contractor is not liable for harm caused by the latter's acts or omissions. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 42; *Gomien v. Wear-Ever Aluminum, Inc.*, 50 Ill. 2d 19, 21 (1971); *Lee v. Six Flags Theme Parks, Inc.*, 2014 IL App (1st) 130771, ¶ 66; Restatement (Second) of Torts § 409 (1965). The reason for this rule is apparent in the definition of an independent contractor:

> "An independent contractor is one who renders service in the course of an occupation representing the will of the person for whom the work is done only as to the result of the work and not as to the means by which it is accomplished, [citation] and is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result. *** The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent." *Hartley v. Red Ball Transit Co.*, 344 Ill. 534, 538-39 (1931).

Accord *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 13 (2004).

¶ 32    Because the hiring entity has no control over the details and methods of the independent contractor's work, it is not in a good position to prevent negligent performance, and liability therefor should not attach. Rather, the party in control—the independent contractor—is the proper party to be charged with that responsibility and to bear the risk. *Fonseca v. Clark*

*Construction Group, LLC*, 2014 IL App (1st) 130308, ¶ 26; *Pestka v. Town of Fort Sheridan Co.*, 371 Ill. App. 3d 286, 300 (2007); Restatement (Second) of Torts § 409 cmt. b (1965).

¶ 33    This does not mean, however, that one who hires an independent contractor is absolutely immune from tort liability for a plaintiff's injuries. As section 414 of the Restatement explains, a hiring entity may yet be liable for its *own* negligence where it retains some control over the independent contractor. Section 414 states:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

¶ 34    In *Larson v. Commonwealth Edison Co.*, 33 Ill. 2d 316, 325 (1965), we implicitly recognized section 414 of the first Restatement of Torts as an expression of Illinois common law. Section 414 of the first Restatement is identical to section 414 of the second Restatement, with the exception that the latter contains an additional comment. Compare Restatement of Torts § 414 (1934), with Restatement (Second) of Torts § 414 (1965).

¶ 35    Numerous appellate court decisions, relying on *Larson*, have cited favorably to section 414 of the second Restatement and applied section 414 in negligence cases involving construction-related injuries. *E.g.*, *Lee*, 2014 IL App (1st) 130771, ¶ 66; *Cain v. Joe Contarino, Inc.*, 2014 IL App (2d) 130482, ¶ 9; *Garcia v. Wooton Construction, Ltd.*, 387 Ill. App. 3d 497, 505 (2008); *Moiseyev v. Rot's Building & Development, Inc.*, 369 Ill. App. 3d 338, 344 (2006); *Downs v. Steel & Craft Builders, Inc.*, 358 Ill. App. 3d 201, 204-05 (2005); *Cochran v. George Sollitt Construction Co.*, 358 Ill. App. 3d 865, 873 (2005); *Clifford v. Wharton Business Group, L.L.C.*, 353 Ill. App. 3d 34, 40 (2004); *Bieruta v. Klein Creek Corp.*, 331 Ill. App. 3d 269, 275 (2002); *Rangel v. Brookhaven Constructors, Inc.*, 307 Ill. App. 3d 835, 838 (1999); *Rogers v. West Construction Co.*, 252 Ill. App. 3d 103, 105 (1993). We see no reason to depart from *Larson* or the numerous appellate court opinions that recognize section 414 of the Restatement as an expression of Illinois common law.

¶ 36    Many appellate court decisions, including the decision under review, have cited section 414 of the Restatement as a basis for imposition of both direct liability and vicarious liability against the employer of an independent contractor. *E.g.*, *Cabrera v. ESI Consultants, Ltd.*, 2015 IL App (1st) 140933, ¶ 102; *Lederer v. Executive Construction, Inc.*, 2014 IL App (1st) 123170, ¶ 49; *Lee*, 2014 IL App (1st) 130771, ¶¶ 68-69; *Ramirez v. FCL Builders, Inc.*, 2014 IL App (1st) 123663, ¶¶ 123, 149; *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶¶ 44-45; *Diaz v. Legat Architects, Inc.*, 397 Ill. App. 3d 13, 31 (2009). The rule set forth in section 414, however, articulates a basis only for imposition of direct liability. Because an employer of an independent contractor is typically not answerable for the contractor's negligence, "the employer's liability must be based upon *his own personal negligence*." (Emphasis added.) Restatement (Second) of Torts, Ch. 15, Topic 1, Introductory Note, at 371 (1965). Section 414 sets forth one way in which an employer of an independent contractor may be negligent and, thus, directly liable for physical harm to others. *Id.* (citing *id.* § 414).

¶ 37    Confusion as to the scope of section 414 appears to arise in connection with comment a, which states:

"If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others." Restatement (Second) of Torts § 414, cmt. a, at 387 (1965).

¶ 38     The first sentence of comment a does not explain when section 414 applies. Rather, it explains when section 414 does not apply. See *Aguirre v. Turner Construction Co.*, 501 F.3d 825, 829 (7th Cir. 2007). If the control retained by the employer is such that it gives rise to a master-servant relationship, thus negating the person's status as an independent contractor, the employer may be liable for the negligence of the contractor's employees under the law of agency. Agency law, under which an employer may be vicariously liable for the torts of its employees, is distinct from the principles encompassed in section 414, under which an employer is directly liable for its own negligence. In short, "section 414 takes over where agency law ends." *Id.*

¶ 39     In the present case, the appellate court held, in connection with plaintiff's claim predicated on section 414, that a genuine issue of material fact exists as to whether defendant retained such control over the work of Happ's to become vicariously or directly liable to plaintiff. 2014 IL App (1st) 130105-U, ¶ 32. Although plaintiff urges us to affirm the appellate court judgment, section 414, as already discussed, addresses only the direct liability of the employer for its own negligence and not vicarious liability, under agency principles, for the contractor's negligence.

¶ 40     Moreover, we agree with defendant that plaintiff has not pursued a claim of vicarious liability. Count II of the complaint, applicable to defendant, speaks only to defendant's own negligence and does not seek to hold defendant vicariously liable for any negligence of Happ's. Because the complaint "frames the issues before the court" (*Walker v. McGuire*, 2015 IL 117138, ¶ 39), we decline to consider a theory of liability not set forth therein. See *Ross v. Dae Julie, Inc.*, 341 Ill. App. 3d 1065, 1069-70 (2003) (on review of summary judgment in favor of the defendant in a construction-related injury case, appellate court declined to consider theory of duty the plaintiff had not included in his complaint). Accordingly, we confine our analysis to whether defendant retained control over the work of its contractor, Happ's, such that direct liability might attach under section 414.

¶ 41     The issue of a defendant's retained control may be decided as a matter of law where the evidence is insufficient to create a factual question. *O'Gorman v. F.H. Paschen, S.N. Nielsen, Inc.*, 2015 IL App (1st) 133472, ¶ 89; *Bokodi*, 312 Ill. App. 3d at 1059. The best indicator of whether the defendant retained control sufficient to trigger the potential for liability under section 414 is the written agreement between the defendant and the contractor. *Cain*, 2014 IL App (2d) 130482, ¶ 76. But even if the agreement provides no evidence of retained control by

the defendant, such control may yet be demonstrated by evidence of the defendant's conduct at variance with the agreement. *Id.* ¶¶ 84, 86.

¶ 42 Defendant argues that under its contract with Happ's, supervision of the bridge removals was placed with Happ's and that defendant's conduct, including its post-accident conduct, does not create a question of fact as to whether it retained control over Happ's for purposes of section 414. Thus, defendant urges this court to reverse the appellate court judgment and affirm the trial court's order granting defendant summary judgment on this theory of liability.

¶ 43 Plaintiff responds that defendant's contract with Happ's, as well as engineering drawings prepared for defendant in connection with the bridge removal project, and testimony from defendant's employees each provide an independent basis for finding that defendant exercised control over Happ's. Accordingly, plaintiff requests that we affirm the appellate court judgment reversing the trial court's grant of summary judgment to defendant.

¶ 44 We agree with defendant that no issue of fact exists as to whether it retained the control necessary to trigger the potential for liability under section 414 of the Restatement. It did not.

¶ 45 The contract between defendant and Happ's expressly provides that Happ's, along with its agents and employees, "are not and shall not be considered as employees of [defendant]," that Happ's "shall be and remain an independent contractor," and that "nothing herein contained shall be construed inconsistent with that status." The contract required Happ's to furnish, at its own expense, "all superintendence," as well as all "labor, tools, equipment, materials, and supplies," necessary to remove the bridges. These provisions do not evince an intent by defendant to retain control over Happ's work. Indeed, the requirement that Happ's provide "all superintendence" placed responsibility for supervision of the bridge removals with Happ's, not defendant.

¶ 46 Plaintiff relies on other language in the contract that he argues gave defendant "unfettered control" over Happ's. Plaintiff points to a provision allowing defendant to terminate the contract if defendant deemed Happ's services to be unsatisfactory, a provision requiring the work by Happ's to be done in a workmanlike manner to the satisfaction of defendant, and a provision giving defendant the right to stop the work or make changes, as the interests of defendant may require. We agree with defendant that these provisions are part of the general rights reserved to someone, like defendant, who employs a contractor, rather than evidence that defendant retained control over the manner in which work by Happ's was performed. As comment *c* to section 414 explains:

> "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414 cmt. c, at 388 (1965).

¶ 47 Plaintiff also relies on provisions in the contract touching on job safety. Plaintiff cites, for example, a provision under which defendant could require the removal of equipment used by Happ's that defendant determined was unsafe for use on its right-of-way, a provision under

which defendant could require Happ's to remove any employee or subcontractor's employee if not acceptable to defendant, and a provision identifying required protective gear, such as hardhats and reflective vests. A general right to enforce safety, however, does not amount to retained control under section 414. *Joyce v. Mastri*, 371 Ill. App. 3d 64, 74 (2007); *Ross*, 341 Ill. App. 3d at 1071-73. Accord *Cain*, 2014 IL App (2d) 130482, ¶ 106. Moreover, the contract placed control of job safety with Happ's. Specifically, Happ's was required "to keep the job site free from safety and health hazards and ensure that its employees are competent and adequately trained in all safety and health aspects of the job."

¶ 48    In sum, we find nothing within the four corners of the contract indicating that defendant retained control such that Happ's was not entirely free to do the work in its own way.

¶ 49    Plaintiff cites to another document that he claims flatly required Happ's to submit a step-by-step sequencing plan before performing bridge-removal work, thus indicating that defendant retained control for purposes of section 414. The document plaintiff cites is actually a set of engineering drawings prepared for defendant by Bowman, Barrett & Associates in July 2004 in connection with the bridge removal project. A note on those drawings, under the heading "general requirements," states: "The contractor must submit for approval his proposed sequence of operations prior to the start of construction."

¶ 50    We have found no evidence in the record, and plaintiff cites to none, indicating that defendant intended to implement such a requirement with respect to the bridge removals at issue here. Rather, Thomas Campbell, defendant's manager of bridge construction, testified that, in his experience, this kind of general requirement is applicable when a contractor removes a "mainline bridge" involving "live traffic." The transportation group would review the construction sequence, together with a timeline, to determine when to "shut down traffic." The bridges Happ's purchased and agreed to remove were abandoned bridges and did not involve "live traffic."

¶ 51    George Meyer, defendant's former manager of special projects in the structures department, similarly testified that a sequencing plan was intended as a safety measure where old bridges involving "main line live tracks" were being removed. A sequencing plan ensured that the contractor was "not going to do anything that could hurt the structure, weaken the structure, and cause a derailment or slow [defendant's] train operations." Although Meyer acknowledged that one "could interpret" the engineering note to require Happ's to provide a sequencing plan prior to dismantling the Polk Street bridge, Meyer also testified that he had never seen the contract between Happ's and defendant. And, as plaintiff concedes, the contract did not incorporate any requirement that Happ's submit a sequencing plan.

¶ 52    Further, plaintiff fails to cite any evidence indicating that defendant provided the engineering plans to Happ's or that defendant otherwise conveyed to Happ's that a sequencing plan was required. Indeed, Edward Benbow, defendant's director of track maintenance, testified that to his knowledge removal of the Polk Street bridge did not require the contractor to submit a demolition plan or review engineering drawings before work began. Additionally, David Reagan, defendant's supervisor of bridge construction in Illinois, who attended the pre-bid meeting, testified that to his knowledge no requirement existed that Happ's provide any type of plan as to how the work would be done. Accordingly, we disagree with plaintiff that the note on the engineering drawings from Bowman, Barrett & Associates provides a basis for finding retained control under section 414.

¶ 53    We next consider evidence of defendant's conduct prior to the accident. Specifically, we consider whether defendant's conduct was at variance with the terms of defendant's agreement with Happ's, under which Happ's agreed to provide "all superintendence" in connection with the bridge removals. We have carefully reviewed the record and find no evidence of retained control by defendant.

¶ 54    Toby Neuschwanger, an employee of Carney Group who worked on the bridge removals, testified that he received no instructions from defendant. According to Neuschwanger, John Pearson, another Carney Group employee, along with Steven Happ, directed his work on the Polk Street bridge. John Pearson, in turn, testified that he never spoke to anyone from defendant railroad prior to the accident and that Steven Happ was in charge. Pearson further testified that on the day of the accident, Patrick Carney, who was topside, told him when the girder was ready to be picked up and that he (Pearson) then signaled the crane operator. Jeff Happ testified that he was told by Steven Happ to take instruction from Carney Group employees at the job site. Rick Binder, the crane operator, as well as plaintiff himself, testified that they never spoke to anyone from defendant railroad prior to the accident. And no dispute exists that a representative of defendant was not even present at the Polk Street bridge at the time of the accident.

¶ 55    The only person involved in the bridge removal who had any interaction with a representative of defendant was Steven Happ. He testified only that on days they were working, a railroad representative would come by and "check out the jobs." Defendant's mere presence at the job site, without more, is insufficient evidence of retained control for purposes of section 414.

¶ 56    Finally, we consider evidence of defendant's conduct following the accident. Although evidence of post-accident remedial measures is not admissible to prove prior negligence, such evidence may be admissible for other purposes, including establishing control of property or control of a contractor's work where such control is at issue. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 300-01 (1995); *Larson*, 33 Ill. 2d at 323-24; see also Thomas M. Fleming, *Admissibility of Evidence of Repairs, Change of Conditions, or Precautions Taken After Accident—Modern State Cases*, 15 A.L.R.5th 119 (1993).

¶ 57    The evidence discloses that, following the accident, Edward Benbow and Thomas Campbell met with Steven Happ to discuss the removal of the Lexington Street bridge, the third and final bridge to be removed under defendant's contract with Happ's. Benbow indicated another incident "was not tolerable," and they discussed "what was going to take place so it wouldn't happen again." Benbow testified that he left the details to Campbell and Happ, the "experts."

¶ 58    Campbell created a list of steps to remove the Lexington Street bridge, which he discussed with Happ. Campbell testified that the steps were "suggestions." Campbell explained: "[Happ] was the owner of that steel. It was up to him to do what he wanted. I was giving him suggestions on how I thought he should take it down that would not allow one girder to fall," but Happ could have "secured the two girders in a different fashion than I suggested." Thus, Campbell testified he would not necessarily have stopped work on the Lexington Street bridge if Happ did not follow his suggestions. Ultimately, Happ's did not remove the Lexington Street bridge. Happ testified that he hired DMD Services, which removed the bridge by using hydraulic shears to chop it up.

¶ 59    Defendant argues that its post-accident conduct, as evidenced by the testimony of Campbell and Benbow, was not evidence of retained control but simply an attempt to promote worker safety and avoid another injury. Defendant contends that penalizing such conduct would hardly advance the goal of work site safety. See *Martens v. MCL Construction Corp.*, 347 Ill. App. 3d 303, 318 (2004).

¶ 60    Plaintiff argues that defendant's post-accident conduct demonstrates that defendant always had a right of control, including at the time of the accident. Plaintiff contends that defendant's conduct here is very similar to the defendant's pre-accident conduct in *Wilkerson v. Paul H. Schwendener, Inc.*, 379 Ill. App. 3d 491 (2008), which the appellate court found sufficient to preclude summary judgment for the defendant. We disagree that defendant's conduct here is similar to the defendant's conduct in *Wilkerson*.

¶ 61    In *Wilkerson*, the record was replete with evidence that the defendant retained and exercised complete control over work site safety. *Id.* at 494-95. In the present case, in contrast, the evidence indicates that, pursuant to defendant's contract with Happ's, the latter was in charge of work site safety, and defendant only sought to avoid another accident by suggesting a way to secure the girders during the final bridge removal. Such conduct is insufficient, as a matter of law, to establish a duty under section 414 of the Restatement. To hold otherwise would penalize a defendant's safety efforts by creating, in effect, strict liability for personal injury to any job site employee. See *Connaghan v. Caplice*, 325 Ill. App. 3d 245, 250 (2001) (holding that "the right to stop the work, tell the contractors to be careful, and change the way something [is] being done if [the defendant] felt something was unsafe" does not establish sufficient control for purposes of section 414); *Fris v. Personal Products Co.*, 255 Ill. App. 3d 916, 924-25 (1994) (holding that the imposition of a duty under section 414 where the defendant retained only a general right to require that work be done in a safe manner would result in strict liability for all injuries to employees of independent contractors).

¶ 62    Because the record contains no evidence that defendant retained at least some degree of control over the manner in which Happ's performed the bridge removal work, we hold that the trial court did not err in granting defendant summary judgment on plaintiff's retained-control theory of duty and liability.

¶ 63                    *Section 411—Negligence in Selection of Contractor*

¶ 64    We next consider plaintiff's claim that defendant was negligent in its selection of Happ's to remove the Polk Street bridge.

¶ 65    In *Gomien v. Wear-Ever Aluminum, Inc.*, 50 Ill. 2d 19, 21 (1971), this court recognized that an employer may be liable in tort for failing to exercise reasonable care in selecting a careful and competent contractor. We applied the rule set forth in section 411 of the Restatement, which states:

> "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
>
> (b) to perform any duty which the employer owes to third persons." Restatement (Second) of Torts § 411 (1965).

A "competent and careful contractor" is a contractor who:

"possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others, and who also possesses the personal characteristics which are equally necessary." *Id.* cmt. a, at 377.

¶ 66    The amount of care required in selecting an independent contractor "is that which a reasonable man would exercise under the circumstances." *Id.* cmt. c, at 378. One factor to consider is "the character of the work to be done—whether the work lies within the competence of the average man or is work which can be properly done only by persons possessing special skill and training." *Id.* In order to subject a defendant to liability, the harm must have resulted from some quality in the contractor that made it negligent for the defendant to entrust the work to him. *Id.* cmt. b, at 377; see also *DiMaggio v. Crossings Homeowners Ass'n*, 219 Ill. App. 3d 1084, 1090 (1991) (a plaintiff must establish that the defendant knew, or should have known, that a particular unfitness of the contractor created a danger of harm to third persons).

¶ 67    Here, the appellate court agreed with the trial court that plaintiff introduced sufficient evidence of Happ's lack of competence to survive summary judgment. 2014 IL App (1st) 130105-U, ¶ 38. Defendant challenges that ruling. Once again, we consider the record evidence.

¶ 68    Plaintiff's engineering expert, Harvey Crouch, testified that the Polk Street bridge was a "through-plate steel girder bridge," which required a special set of skills to take down that Happ's did not possess. According to Crouch, girders on through-plate steel bridges are unstable, and the girders on the Polk Street bridge should have been secured prior to removing the majority of the floor beams.

¶ 69    Steven Happ's testimony clearly revealed his lack of experience in the removal of steel bridges. Happ testified that the major focus of his company was recycling steel and railroad ties. Although Happ's had taken down wooden trestle bridges and perhaps a small steel bridge with wooden approaches, his company had never taken down a steel bridge the size and magnitude of the Polk Street bridge.

¶ 70    The record also reveals that defendant was unaware that Happ's had no experience in taking down steel bridges. Testimony from Abe Ghazai, a member of defendant's engineering department, and Thomas Campbell, defendant's manager of bridge construction, established that no inquiry was made into whether Happ's had experience and that defendant selected Happ's, which was on defendant's list of approved contractors, because (1) Happ's was in the right type of business, *i.e.*, track and scrap removal; (2) Happ's was local; and (3) Happ's bid was the most economical.

¶ 71    Defendant argues that even if it should have further investigated Happ's, such investigation would have disclosed that Happ's had engaged a competent and experienced bridge demolition contractor, Carney Group, and that no liability could attach under section 411.

¶ 72    The record discloses that Carney Group did have extensive experience in bridge demolition. Indeed, Patrick Carney's conduct at the job site, as plaintiff's expert conceded, demonstrated Carney's appreciation of the risk posed by the unsecured west girder. Carney testified that he measured the height of the girder to make certain that Toby Neuschwanger, who was making the final cuts to the crossbeams, was not in danger if the west girder fell.

Carney also testified, however, that his expertise was in using explosives to bring down a bridge but that Happ did not want to use explosives. Happ wanted to "pick" the bridges. Carney testified that the last time he had been involved in picking a steel bridge like the Polk Street bridge was approximately 16 years prior to the incident in which plaintiff was injured.

¶ 73    Based on this record, we agree with the courts below that a fact question exists as to whether defendant failed to exercise reasonable care to employ a careful and competent contractor.

¶ 74    This conclusion does not end our analysis. The trial court ruled that plaintiff, as an employee of Carney Group, who had partnered with Happ's, was not a "third person" to whom defendant owed a duty under section 411 and thus entered summary judgment in favor of defendant on plaintiff's negligent hiring claim. The appellate court declined to take up that issue, holding that a fact question exists as to whether plaintiff was an employee of Carney Group or simply "hanging around" the job site. 2014 IL App (1st) 130105-U, ¶ 40.

¶ 75    We turn first to plaintiff's employment status. Defendant argues that the record affirmatively establishes that, at the time of the accident, plaintiff was an employee of his father's company, Carney Group. That company, as we earlier noted, did business under the assumed name of Chicago Explosive Services. In his deposition and his verified response to defendant's interrogatories, plaintiff acknowledged that, as of the date of the accident, he was an employee of Chicago Explosive Services. Plaintiff also testified that on the day of the accident, his father called him to the job site as "extra labor" to connect the crane cables to the railroad bridge. That testimony was consistent with plaintiff's verified complaint in which he alleged that he "helped hook crane cables to the eastern most girder" on the Polk Street bridge. Plaintiff's testimony was also consistent with his response to defendant's summary judgment motion where plaintiff, citing his own deposition testimony, maintained that he "worked for his father's company, Chicago Explosive Services," and that the "Polk Street bridge was [his] first involvement in dismantling train bridges."

¶ 76    The record also reveals that, based on his status as an employee of Chicago Explosive Services, plaintiff filed a claim with Liberty Mutual Insurance Company (Liberty), Carney Group's workers' compensation insurer. Plaintiff supplemented his discovery responses in this case with a copy of his declaratory judgment action against Liberty. Therein he alleged that he was an employee of Chicago Explosive Services, which, on July 31, 2006, was working on one of the company's job sites in Chicago in connection with the dismantling of a bridge. Plaintiff further alleged that "[a]t that time and place, and in the course of his employment with Chicago Explosive," he suffered severe personal injuries. The record establishes that plaintiff eventually settled his workers' compensation claim for $1,168,647 and that Chicago Explosive Services and Liberty agreed to waive their statutory liens.

¶ 77    We conclude that no fact issue exists as to whether plaintiff was an employee of Carney Group at the time of the accident. He was. Plaintiff's claim that he was a "bystander" is not well taken. The question remains, however, whether plaintiff's status as an employee of Carney Group places him outside the group of "third persons" to whom a duty under section 411 applies.

¶ 78    In determining who a proper plaintiff is in an action based on negligent selection of an independent contractor, we turn first to the Restatement itself. Although the Restatement is not, of course, binding in any way on Illinois courts, because we implicitly adopted section 411

of the Restatement in *Gomien*, we find it necessary to determine what section 411 does and does not provide.

¶ 79        Section 411 makes no attempt to define those persons who qualify as "third persons" to whom a duty extends. Section 411 does, however, provide several illustrations that, we observed in *Gomien*, "pinpoint" the varying scenarios that "give rise to liability or exoneration." *Gomien*, 50 Ill. 2d at 23. As defendant here notes, not one of the illustrations to section 411 involves a plaintiff who was an employee of the negligently hired contractor or an employee of a subcontractor. Restatement (Second) of Torts § 411, illus. 1-8, at 377-81 (1965). Instead, the plaintiffs were a customer who was injured by the defendant's violent collecting agent (illustration 1); a motorist who was injured by the negligence of a contractor the defendant hired to haul logs (illustration 2); a motorist whose car was hit by a bus hired by a hotel owner to transport guests, as well as the hotel guests riding on the bus who were injured in the collision (illustrations 3 and 4); a pedestrian who was run over by a teamster hired by the defendant builder to haul materials (illustration 5); a pedestrian who was injured by a cornice falling from the defendant's house when the contractor the defendant hired failed to make timely repairs or was negligent in making the repairs (illustrations 6 and 7); and a motorist who was injured by falling brick from a building that abutted a public highway, owing to the shoddy work of the defendant's contractor (illustration 8).

¶ 80        Similar to the illustrations in the Restatement, the plaintiff in *Gomien* was a motorist who was injured when a car driven by the defendant's distributor collided with the plaintiff's vehicle. Although we were not asked in *Gomien* to consider the reach of the duty set forth in section 411, nothing about the facts or analysis in that case suggest that this court, when it adopted section 411, intended to extend the duty thereunder to job site employees, a scenario not encompassed by the illustrations to section 411. This conclusion is reinforced by the fact that the only Illinois case prior to *Gomien* that favorably cited section 411 also involved a plaintiff who clearly fit within the illustrations to section 411. See *Tansey v. Robinson*, 24 Ill. App. 2d 227 (1960) (involving a plaintiff who was injured when the car in which she was seated was struck by a truck driven by a man hired to make deliveries for the defendant).

¶ 81        In the 45 years since *Gomien* was decided, only one reported Illinois case, *Recio v. GR-MHA Corp.*, 366 Ill. App. 3d 48 (2006), involved a claim by a job-site employee alleging negligent selection of a contractor. In *Recio*, an employee of a subcontractor died after falling from a ladder. His widow sought compensation from the general contractor for negligently selecting her husband's employer. The appellate court, from the outset, questioned whether an employee of a negligently retained entity may recover under section 411. Although recognizing contrary authority, the appellate court observed: "It would appear that such an employee is not within the class of third parties to whom a duty of care in hiring an independent contractor extends." *Id.* at 58. The appellate court went on to hold that the widow's claim failed, in any event, under a standard negligence analysis. *Id.* at 59.

¶ 82        Defendant argues that the distinction recognized in *Recio*, between third persons to whom the duty in section 411 extends and employees involved in the work of the contractor to whom the duty does not extend, has also been recognized by the majority of courts that have considered this issue. See *Camargo v. Tjaarda Dairy*, 25 P.3d 1096, 1100 (Cal. 2001) (collecting cases and observing that the "overwhelming majority of the courts of other jurisdictions that have addressed the question have concluded that an employee of a contractor

is *not* a third person for the purposes of section 411" (emphasis in original)); *Best v. Energized Substation Service, Inc.*, 623 N.E.2d 158, 162 (Ohio Ct. App. 1993) (collecting cases and holding that a "principal cannot be held liable by an independent contractor's employee for negligent selection of the independent contractor"); but see *Bagley v. Insight Communications Co.*, 658 N.E.2d 584, 588 (Ind. 1995) (plaintiff's status as an employee of an independent contractor did not preclude him from pursuing a negligent hiring claim against contractor's principal); *Sievers v. McClure*, 746 P.2d 885, 891 (Alaska 1987) ("employer's duty to act reasonably in hiring a competent contractor runs to the employees of the contractor").

¶ 83    Plaintiff counters that *Recio* and the out-of-state cases defendant cites are irrelevant because, unlike the plaintiffs in those cases, he is not an employee of the negligently hired independent contractor seeking to hold liable the contractor's principal. Instead, he is, "at worst," an employee of a subcontractor, seeking to hold liable the entity that negligently hired the subcontractor's principal. Based on this distinction, plaintiff argues that he qualifies as a "third person" for purposes of section 411. We disagree.

¶ 84    Generally, courts that have held that an employee of a contractor cannot pursue a claim under section 411 against the contractor's principal have identified the following reasons: (1) the illustrations and comments to section 411 make no provision for such liability (*Mentzer v. Ognibene*, 597 A.2d 604, 608 (Pa. Super. Ct. 1991); *Payne v. Lee*, 686 F. Supp. 677, 679 (E.D. Tenn. 1988); *Chapman v. Black*, 741 P.2d 998, 1005 (Wash. Ct. App. 1987)); (2) the purpose of section 411, assuring a remedy to an injured person, is already satisfied when that person receives workers' compensation benefits (*Jones v. Schneider National, Inc.*, 797 N.W.2d 611, 615 (Iowa Ct. App. 2011)); (3) because the cost of workers' compensation coverage is typically included in the contractor's price for the work that the employer of the contractor pays, holding the employer liable under section 411 would effectively make the employer pay twice for the injuries to the contractor's employees (*Lipka v. United States*, 369 F.2d 288, 293 (2d Cir. 1966)); (4) it would be inequitable to impose liability on the employer for negligent hiring when the liability of the contractor, who is primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage (*Camargo*, 25 P.3d at 1101); and (5) a contractor's employees are better able to protect themselves against the negligence of an improperly hired contractor than members of the general public (*Mentzer*, 597 A.2d at 609; *Payne*, 686 F. Supp. at 679).

¶ 85    We note that in *Urena v. Capano Homes, Inc.*, 930 A.2d 877 (Del. 2007), the Supreme Court of Delaware cited many of these same reasons for disallowing a claim under section 411 brought by an injured employee similarly situated to plaintiff here. In *Urena*, the owner of the construction site property hired a general contractor who, in turn, hired a roofing subcontractor. The roofing subcontractor, in turn, subcontracted with two partners, one of whom hired the plaintiff.

¶ 86    The Delaware high court agreed with the majority view that employees of independent contractors have no negligent hiring claim:

"First, employees, unlike members of the general public, are able to protect themselves from the risks of their work. Second, an employee's recovery for work-related injuries generally is limited to workers' compensation benefits. It would be 'indefensible' if employees of an independent contractor could recover in tort against the general contractor, but employees of the general contractor were limited to workers'

compensation. The same anomaly would have the detrimental effect of encouraging contractors to use their own employees for hazardous work instead of hiring independent contractors with special skills. Finally, none of the illustrations to Section 411 include employees of an independent contractor as 'third persons.' " *Id.* at 880.

¶ 87 We also find guidance in a case from our appellate court. In *Apostal v. Oliveri Construction Co.*, 287 Ill. App. 3d 675 (1997), the plaintiff was identically situated to plaintiff here; he was an employee of a subcontractor, injured on the job, who sought to hold the premises owner liable in tort under various sections of the Restatement. *Apostal* involved sections 413, 416, and 427, which recognize that independent contractors who perform dangerous work owe a duty of care to "others." Restatement (Second) of Torts §§ 413, 416, 427 (1965). Although *Apostal* did not involve section 411 at issue here, we nonetheless find it significant that the appellate court held that the duty to "others" under the Restatement ran only to persons such as passersby or adjacent property owners and not to employees of independent contractors. *Apostal*, 287 Ill. App. 3d at 682. The appellate court noted that all of the illustrations to those three sections of the Restatement "refer to injuries occurring to third parties." *Id.*

¶ 88 Based on the foregoing authorities, we conclude that plaintiff here is not a "third person" to whom the duty recognized in section 411 of the Restatement applies. Unlike members of the general public who might have been travelling on Polk Street on the day of the accident, plaintiff was in a position to protect himself against the risks involved in the bridge removal. Members of the general public who were in the area might not have even been aware of any risk to their persons. Further, because plaintiff was employed by Carney Group, Happ's subcontractor, he could and did receive workers' compensation benefits. A member of the public, had he or she been injured, would likely not be in that position and would, instead, be left to the risks and unpredictability of litigation to receive compensation for his or her injuries. Finally, as already discussed, we cannot conclude that *Gomien*, which adopted section 411, envisioned that the duty would extend to job site employees, where none of the several illustrations to section 411 include such a scenario. Accordingly, we hold that the trial court properly granted summary judgment to defendant on plaintiff's claim under section 411 of the Restatement.

¶ 89 *Section 343—Dangerous Conditions on the Land*

¶ 90 As a final matter, we turn to plaintiff's premises liability claim under section 343 of the Restatement, which this court adopted in *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468 (1976). *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 26 (1992). Section 343 states:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343 (1965).

¶ 91      Here, the allegedly dangerous condition on the land was the steel plate that extended several feet into the roadbed on which plaintiff was standing at the time the west girder fell. The appellate court held that a fact question exists as to whether defendant should have known that workers would fail to discover how far the steel floor plate extended, thus precluding summary judgment for defendant. 2014 IL App (1st) 130105-U, ¶ 46. Defendant argues that the appellate court erred in reversing summary judgment because this case does not satisfy any of the criteria for liability under section 343.

¶ 92      The first criterion is that the condition of which plaintiff complains must be a "condition on the land." Defendant maintains that the steel floor plate was not a condition on its land; it was a part of the bridge, which Happ's purchased under its agreement with defendant, "AS IS, WHERE IS, AND WITH ALL FAULTS."

¶ 93      The record demonstrates that the steel plate was, in fact, a part of the bridge. Thomas Campbell, defendant's manager of bridge construction, and George Meyer, defendant's then manager of special projects in the structures department, testified that a steel plate, sometimes referred to as a "closure plate" or "transition plate," is typically used in the construction of through-plate steel bridges like the Polk Street bridge. Its purpose is to create a transition from the bridge deck to the roadbed and to keep the ballast in place. Plaintiff's own expert, Harvey Crouch, testified that the plate, which he referred to as an "end plate," is "an extension of the [bridge] floor." Thus, the steel plate, as Meyer testified, "belonged to the bridge," and the bridge, as Happ testified, belonged to him, pursuant to the purchase and removal agreement.

¶ 94      Plaintiff argues, however, that because the steel plate extended into the roadbed, it must be deemed a condition on defendant's land. Assuming, *arguendo*, that this fact alone is a sufficient basis on which to conclude that the steel plate constitutes a "condition on the land," section 343 also requires that the defendant have actual or constructive knowledge of the condition. See, *e.g.*, *Recio*, 366 Ill. App. 3d at 63; *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1038 (2000). Although the record demonstrates that defendant had knowledge that through-plate steel bridges typically have transition plates, no evidence was presented that defendant knew or should have known the extent to which the transition plate on the Polk Street bridge extended into the roadbed.

¶ 95      Thomas Zapler, defendant's director of community relations, and Edward Benbow, defendant's director of track maintenance, both testified that the Polk Street bridge was constructed in the 1900s. According to defendant's verified answers to plaintiff's discovery requests, defendant acquired the Polk Street bridge from the Consolidated Rail Corporation in 1996 as part of a larger purchase. Defendant, the previous year, had acquired the railroad lines that ran through Polk Street, pursuant to its merger with the Chicago & North Western railway. None of those lines, however, ran over the Polk Street bridge at issue here. According to Benbow, there had not been any operations on the Polk Street bridge since at least 1982, when he first arrived in Chicago. Thus, the record demonstrates that defendant did not build the bridge and did not use the bridge.

¶ 96      Plaintiff claims, nonetheless, that defendant knew the steel floor plate extended several feet beyond the last bridge beam. But the only evidence plaintiff cites in support of this claim is testimony from Crouch, his own expert witness. Crouch's estimate that the steel plate extended five to six feet beyond the last floor beam cannot be imputed to defendant, and plaintiff cites no testimony or other record evidence that defendant knew the plate extended five to six feet back

or, if plaintiff's testimony is given credence, seven to eight feet back. Rather, George Meyer and Thomas Campbell both testified that a transition plate typically extends only two feet beyond the last crossbeam. Campbell further testified that he had never seen a transition plate that extended as far back as the one on the Polk Street bridge. Additionally, plaintiff admits that defendant did not possess the original construction plans for the bridge, which may have shown the extent of the plate.

¶ 97 We note also that Crouch's testimony that the steel plate extended five to six feet into the roadbed was based on post-accident photos of the bridge and not on any particular characteristic of the bridge. Indeed, Crouch testified that although he had seen end plates on a lot of through-plate steel girder bridges, "some of them you just can't tell where they stop and start," and that was true of the Polk Street bridge also.

¶ 98 Because the record affirmatively demonstrates that defendant did not build the bridge, did not possess the plans for the bridge, did not use the bridge, and had no reason to know that the steel floor plate extended several feet into the roadbed, we hold that the trial court did not err in entering summary judgment in favor of defendant on plaintiff's premises liability claim.

¶ 99 In light of our holding, we need not consider defendant's further argument that the inert steel floor plate, which had functioned without incident for numerous decades, did not create an "unreasonable risk of harm," as section 343 also requires.

¶ 100                                                        CONCLUSION

¶ 101 For the reasons set forth above, we reverse the judgment of the appellate court and affirm the judgment of the circuit court granting defendant's motion for summary judgment.

¶ 102 Appellate court judgment reversed; circuit court judgment affirmed.

¶ 103 JUSTICE KILBRIDE, dissenting:

¶ 104 Plaintiff was seriously injured in a bridge-removal accident that resulted in both of his legs being severed beneath his knees. I disagree with the majority's determination that plaintiff's action against defendant, raising three independent negligence claims, is suitable for resolution by summary judgment. More specifically, I cannot join in the majority's conclusion that defendant is entitled to summary judgment on all counts. Accordingly, I dissent.

¶ 105 Without question, summary judgment is a "drastic means of disposing of litigation." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49 (citing *Adames v. Sheahan*, 233 Ill. 2d 276, 296 (2009)). Summary judgment is warranted only in the most limited circumstances, namely, when the movant's right to relief is "clear and free from doubt." *Mashal*, 2012 IL 112341, ¶ 49; see also *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249 (1994) (concluding that "[w]here doubt exists as to the right of summary judgment, the wiser judicial policy is to permit resolution of the dispute by a trial").

¶ 106 Reflecting on these principles, the Illinois Code of Civil Procedure permits entry of summary judgment only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). This court reviews *de novo* a ruling on a motion for summary judgment, and we must construe the pleadings, depositions, admissions, and affidavits strictly against the moving

- 19 -

party and liberally in favor of the opponent. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. Summary judgment should not be entered when (1) there is a dispute related to a material fact, (2) reasonable persons could make divergent inferences from undisputed material facts, or (3) reasonable persons could disagree on the weighing of relevant factors of a legal standard. *Seymour*, 2015 IL 118432, ¶ 42.

¶ 107    Here, plaintiff's claims are based on allegations of negligence against defendant, requiring plaintiff to plead and prove (1) the existence of a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) injury proximately caused by the breach. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. This court recognizes that whether a duty exists is a question of law that can be resolved in a motion for summary judgment. *Bruns*, 2014 IL 116998, ¶ 13. As the majority opinion observes, plaintiff effectively relies on three sections of the Restatement (Second) of Torts to support his allegations that defendant owed him a duty of reasonable care: section 414 (Negligence in Exercising Control Retained by Employer); section 411 (Negligence in Selection of Contractor); and section 343 (Dangerous Conditions Known to or Discoverable by Possessor). Despite the complex factual circumstances underlying this case, the majority concludes that defendant is entitled to summary judgment on all three theories (*supra* ¶ 101). I do not agree.

¶ 108    Section 414 of the Restatement operates as an exception to the general rule that an individual who hires an independent contractor is not liable for the acts or omissions of that contractor. Specifically, section 414 imposes liability on the hiring entity for an independent contractor's harmful conduct when the employer "retains the control of any part of the [independent contractor's] work." Restatement (Second) of Torts § 414 (1965). Comment c is particularly relevant to this case because it explains the concept of "retained control" as follows:

> "[T]he employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414 cmt. c, at 388 (1965).

¶ 109    This court implicitly adopted the substantively identical section 414 from the Restatement of Torts in *Larson v. Commonwealth Edison Co.*, 33 Ill. 2d 316, 325 (1965). Restatement of Torts § 414 (1934). Subsequently, our appellate court has repeatedly applied section 414 of the Restatement (Second) of Torts in construction-related negligence cases. See *supra* ¶¶ 34-36 (making same observation and collecting cases).

¶ 110    Although I agree with the majority that section 414 does not contemplate allegations of vicarious liability (*supra* ¶¶ 36-39), that distinction does not fundamentally alter the critical inquiry under section 414 required here—whether defendant retained sufficient control over Happ's, the independent contractor involved in the bridge-removal project. For purposes of section 414, the question of whether the hiring entity retained sufficient control over an independent contractor is inherently fact intensive. As our appellate court has aptly observed in

the context of section 414, "[t]he demarcation between retained control and the lack thereof is not clear-cut." *Martens v. MCL Construction Corp.*, 347 Ill. App. 3d 303, 314 (2004); see also *Bokodi v. Foster Wheeler Robbins, Inc.*, 312 Ill. App. 3d 1051, 1059 (2000) (noting that the trier of fact is typically responsible for determining whether the principal retained sufficient control over an independent contractor). This is particularly true under the circumstances of this case.

¶ 111 Like the majority, I initially focus on the written agreement between defendant and its contractor, Happ's. See *Cain v. Joe Contarino, Inc.*, 2014 IL App (2d) 130482, ¶ 76 (noting that " '[t]he best indicator of whether a contractor has retained control over the subcontractor's work is the parties' contract, if one exists.' " (quoting *Downs v. Steel & Craft Builders, Inc.*, 358 Ill. App. 3d 201, 205 (2005))). Here, the contract, *inter alia*, identified Happ's as an "independent contractor" and required Happ's to provide "all superintendence" for the bridge-removal project. The contract also reserved to defendant a general right to stop work or make changes. Under comment c, this general reservation is arguably the type considered insufficient for a finding of retained control by the employer. I observe, however, that the contract contained additional language not identified in comment c, particularly the requirement that Happ's perform the project in a workmanlike manner "to the satisfaction and acceptance" of defendant's representative. The contract also bestowed on defendant the authority to remove any of Happ's employees that defendant deemed "not acceptable." In my opinion, this contractual language evinces a higher level of control than the general reservations of rights described in comment c of section 414.

¶ 112 Furthermore, defendant's conduct following the accident demonstrates its retention of control. See *Herzog v. Lexington Township*, 167 Ill. 2d 288, 300-01 (1995) (explaining that evidence of subsequent remedial measures is not admissible for proving prior negligence but is admissible for other purposes, including establishing control or ownership); *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 72 (citing *Herzog* for same proposition). According to plaintiff's allegations, defendant became involved in the post-accident activities almost immediately, and defendant's representatives were intimately involved in the remainder of the bridge-removal project. In fact, defendant's representatives directed Happ's to provide a detailed plan for ongoing work on the project and indicated that another incident would not be tolerable. I agree with the appellate court's assessment of this evidence—that it further illustrated the control defendant retained over Happ's. 2014 IL App (1st) 130105-U, ¶ 32.

¶ 113 At a minimum, I believe that reasonable persons could make different inferences from the relevant evidence and disagree on the weight afforded to the contractual provisions when determining whether defendant retained sufficient control over Happ's for purposes of section 414. This is especially true when, as always, we are required to construe the pleadings, depositions, admissions, and affidavits liberally *in favor* of plaintiff, the party opposing summary judgment here. *Seymour*, 2015 IL 118432, ¶ 42. Because I believe that reasonable persons could make divergent inferences from the undisputed facts in this case and disagree on the weight of factors related to defendant's retained control, I believe summary judgment was improper. Accordingly, I would affirm the appellate court's judgment reversing the circuit court's entry of summary judgment in favor of defendant on plaintiff's section 414 allegations.

¶ 114    Next, the majority considers plaintiff's claim that defendant was negligent in its selection of Happ's to remove the bridge. This claim implicates section 411 of the Restatement (Second) of Torts, titled "Negligence in Selection of Contractor." Section 411 subjects an employer to liability for physical harm to third persons caused by the failure to exercise reasonable care to employ a competent and careful contractor to perform (1) work involving a risk of physical harm, unless it is skillfully and carefully done or (2) any duty that the employer owes to third persons. Restatement (Second) of Torts § 411 (1965); see also *Gomien v. Wear-Ever Aluminum, Inc.*, 50 Ill. 2d 19, 21 (1971) (this court applying section 411 of the Restatement).

¶ 115    I agree completely with the majority's thorough review of the facts pertaining to section 411 and its ultimate conclusion that a fact question exists as to whether defendant failed to exercise reasonable care to employ a careful and competent contractor. *Supra* ¶¶ 67-73. I disagree, however, with the majority's subsequent determination that plaintiff was not a "third person" to whom defendant owed a duty under section 411 based on plaintiff's status as an employee of Carney Group. *Supra* ¶ 88.

¶ 116    Section 411 does not define the term "third person" for purposes of the duty analysis. Because this court has never considered the issue, it is a matter of first impression. While some jurisdictions have interpreted the term to exclude employees of an independent contractor (see, *e.g.*, *Camargo v. Tjaarda Dairy*, 25 P.3d 1096, 1100 (Cal. 2001) (collecting cases)), others have reached the opposite conclusion. See *Bagley v. Insight Communications Co.*, 658 N.E.2d 584, 588 (Ind. 1995) (holding that plaintiff's status as employee of independent contractor did not preclude the plaintiff from advancing a negligent-hiring claim); *Sievers v. McClure*, 746 P.2d 885, 891 (Alaska 1987) (holding that the "employer's duty to act reasonably in hiring a competent contractor runs to the employees of the contractor").

¶ 117    The majority here adopts a rule that precludes a contractor's employee from seeking relief under section 411 in every instance, reasoning that an injured worker is entitled to seek workers' compensation benefits and is better situated to protect himself from workplace dangers when compared to a bystander. *Supra* ¶ 88. Although the majority's approach has the superficial appeal of a bright-line rule, I find it unnecessarily rigid. I would, therefore, adopt the rule of those jurisdictions that do not automatically exclude employees of independent contractors from the "third person" category under section 411. In my view, this approach is preferable because it permits a measured case-by-case analysis. It also provides adequate protection for employees injured by the negligent hiring of incompetent or careless contractors.

¶ 118    As the Supreme Court of Indiana has recognized, "public policy concerns militate against permitting an employer to absolve itself of all further responsibility by transferring its duties to an independent contractor," and the law "encourage[s] the employer of the contractor to participate in the control of work *** in order to minimize the risk of resulting injuries." *Bagley*, 658 N.E.2d at 588. Rejecting the suggestion that an injured employee is not similarly situated to an injured non-employee third party, the court explained:

       "Our objective is no less to protect workers who may be exposed to such risks than it is to protect non-employee third parties. The fact that partial remuneration through worker's compensation benefits may be available to an employee of an independent contractor does not diminish the policy rationale of providing an additional incentive to

- 22 -

eliminate or minimize particular risks of injuries which arise from non-delegable duties." *Bagley*, 658 N.E.2d at 588.

¶ 119 Likewise, the Supreme Court of Alaska explained that permitting an injured employee of an independent contractor to seek recovery based on a negligent-hiring theory under section 411 "is not unduly burdensome, as in most cases it requires no additional effort from an employer who must act reasonably in the selection process in any event in order to protect third parties from harm." *Sievers*, 746 P.2d at 891. It also has the added benefit of "further[ing] the goal of industrial safety by discouraging the employment of contractors notorious for cutting costs at the expense of their employees' health and safety." *Sievers*, 746 P.2d at 891.

¶ 120 I would adopt the rationale of those courts to reject a *per se* rule that prohibits a contractor's employee from relying on section 411. Consistent with that authority, I would similarly conclude that plaintiff in this case is not precluded from seeking recovery on a negligent-hiring theory under section 411 as a matter of law. In turn, because a question of fact exists on whether defendant failed to exercise reasonable care to employ a careful and competent contractor when it hired Happ's, I would affirm the appellate court's decision that summary judgment was improper on plaintiff's section 411 claim.

¶ 121 Lastly, the majority concludes that defendant was entitled to summary judgment on plaintiff's premises liability claim under section 343 of the Restatement (Second) of Torts. Section 343 imposes liability on a landowner "for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343 (1965); see also *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468 (1976) (adopting section 343).

¶ 122 The majority accepts, for purposes of plaintiff's argument, that the underground steel plate of the bridge was a "condition on the land" but nonetheless concludes that there was no evidence defendant knew or should have known of that condition. *Supra* ¶ 94. Ultimately, the majority reasons that summary judgment in favor of defendant on plaintiff's section 343 claim was proper "[b]ecause the record affirmatively demonstrates that defendant did not build the bridge, did not possess the plans for the bridge, did not use the bridge, and had no reason to know that the steel floor plate extended several feet into the roadbed." *Supra* ¶ 98.

¶ 123 In my opinion, the majority's conclusion overlooks an important and indisputable fact—defendant was, at all times, the owner of the land where the bridge was located and the accident occurred. See, *e.g.*, *Esser v. McIntyre*, 267 Ill. App. 3d 611, 617 (1994) (recognizing that at common law the salient question for a premises liability claim is whether defendant maintained possession and control of the real property where the tort occurred). Moreover, having owned the bridge since 1996, defendant was arguably in a better position to know the location of the bridge's underground steel plate than Happ's, who acquired the bridge from defendant on July 19, 2006. The accident occurred shortly after, on July 31, 2006. In other words, at the time of the accident, defendant had owned the bridge for the preceding decade, while Happ's had owned it for less than two weeks. Under these circumstances, I believe that reasonable minds could disagree on whether defendant knew or should have known about the underground steel plate and whether the plate posed an unreasonable risk of harm to the

construction workers involved in removing the bridge. Accordingly, I believe that summary judgment on plaintiff's section 343 claims was improper, and I would affirm the appellate court's judgment reaching the same conclusion.

¶ 124 In closing, it is worth reemphasizing the complicated factual disputes involved in this case. Indeed, the lower courts did not agree on whether this case could be resolved by summary judgment, an admittedly "drastic means of disposing of litigation" (*Mashal*, 2012 IL 112341, ¶ 49). Summary judgment should not be entered when (1) there is a dispute related to a material fact, (2) reasonable persons could make divergent inferences from undisputed material facts, or (3) reasonable persons could disagree on the weight of the relevant factors of the applicable legal standard. *Seymour*, 2015 IL 118432, ¶ 42. As explained in this dissent, I believe all three situations exist here, and thus, I agree with the appellate court that summary judgment was improper. I would affirm the appellate court's judgment that reversed the circuit court's order granting defendant's motion for summary judgment.

¶ 125 For these reasons, I respectfully dissent.