2020 IL App (1st) 191587-U

No. 1-19-1587

Order filed September 2, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | |
|---|---|
| ARIEL HILL AND JAMAL WOODS, | ) |
| | ) Appeal from the |
| Plaintiffs-Appellants, | ) Circuit Court of |
| | ) Cook County |
| v. | ) |
| | ) No. 17 L 7638 |
| CITY OF CHICAGO, A MUNICIPAL CORPORATION, | ) |
| CHICAGO POLICE OFFICER KEVIN R. JOHNSON, | ) Honorable |
| INDIVIDUALLY AND AS AGENT OF CITY OF | ) Christopher Lawler, |
| CHICAGO, | ) Judge Presiding. |
| | ) |
| Defendants-Appellees. | ) |

JUSTICE BURKE delivered the judgment of the court.
Justices Gordon and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse the circuit court's entry of summary judgment where there was a genuine issue of material fact regarding whether Commander Johnson was executing and enforcing the law and whether he acted willfully and wantonly at the time of the traffic collision.

¶ 2    Plaintiffs, Ariel Hill and Jamal Woods, brought this action against defendants, City of Chicago, a municipal corporation (the City), and Chicago police commander Kevin Johnson,

following a traffic collision between Woods's vehicle, in which Hill was a passenger, and Commander Johnson's unmarked police vehicle. Plaintiffs alleged that Commander Johnson acted willfully and wantonly in entering an intersection against a red light and that his conduct directly resulted in the vehicle collision that caused plaintiffs' injuries. The circuit court granted defendants' motion for summary judgment finding that, based on the evidence presented, defendants were entitled to immunity pursuant to Section 2-202 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) ((745 ILCS 10/2-202 (West 2016)) because Commander Johnson was executing and enforcing the law at the time of the collision and because no reasonable trier of fact could find that Commander Johnson acted willfully and wantonly in driving into the intersection.

¶ 3    On appeal, plaintiffs contend that the circuit court erred in granting defendants' motion for summary judgment where the court found, as a matter of law, that Commander Johnson was executing and enforcing the law at the time of the collision and that Commander Johnson's conduct was not willful and wanton. Plaintiffs assert that the evidence presented demonstrated that there was at least a genuine issue of material fact on these matters precluding the court's entry of summary judgment and that whether Commander Johnson acted willfully and wantonly was a question of fact for the jury. For the reasons that follow, we reverse the judgment of the circuit court and remand for further proceedings.

¶ 4                                I. BACKGROUND

¶ 5    In their complaint, plaintiffs asserted that on July 22, 2017, Woods was driving a vehicle in which Hill was a passenger. Woods was driving westbound on Roosevelt Road near the intersection with Union Street when Commander Johnson, who was driving an unmarked police vehicle southbound on Union Street, began pursuing a vehicle. Plaintiffs asserted that Commander

Johnson willfully and wantonly pursued the vehicle into the intersection and caused plaintiffs injury.

¶ 6    Defendants filed an answer to the complaint in which they denied the allegations in the complaint and raised the affirmative defense of comparative negligence. Defendants asserted that Woods was negligent in his operation of his vehicle and that his negligence was, at least in part, the proximate cause of Hill's injuries. Defendants also filed a counterclaim in which they repeated their comparative negligence theory. Defendants asserted that in the event they were held liable for Hill's injuries, Woods would be liable to pay a proportionate share of the judgment based on his own negligence.

¶ 7    In his deposition, Commander Johnson testified that on July 22, 2017, he was stopped at a red light at the intersection of Union Street and Roosevelt Road when a police pursuit drove by him. Commander Johnson did not know the police pursuit was occurring behind him until he saw the vehicles involved in the pursuit, but he was aware there was a pursuit on Interstate 290, the Eisenhower Expressway. Commander Johnson saw a vehicle matching the description of the vehicle involved in the pursuit on Interstate 290 drive past him at the red light on Union Street, heading south. The vehicle was followed by a police vehicle. Commander Johnson testified that he was not assigned to participate in the pursuit, but made the decision to assist with the pursuit because of his role as a commander in the Chicago police department (CPD). Commander Johnson testified that in such situations, he would generally make a radio call announcing his involvement as the highest-ranking member on the scene, but he did not make such an announcement in this case.

¶ 8    When Commander Johnson saw the vehicle and pursuing police vehicle drive by, he activated his emergency lights and siren. Commander Johnson believed that there would be

additional police vehicles pursuing the vehicle and he intended to block off traffic in the intersection. Commander Johnson testified that he moved slowly forward into cross-traffic so that no one would get hurt. When deciding whether to drive into the intersection, Commander Johnson testified that he conducted a "balancing test" and considered the time of the day, the lighting, the road conditions, the level of traffic, and the necessity to protect the public. Commander Johnson also considered his ability to observe his surroundings and his ability to see cross-traffic. Before Commander Johnson moved into the intersection, he could not see westbound traffic on Roosevelt Road because his view was obstructed by other vehicles, a fence, and shrubbery. Commander Johnson never saw the vehicle that struck his vehicle when he pulled out into the intersection because the other vehicle was driving "too fast."

¶ 9    Jamal Woods testified at his deposition that on July 22, 2017, shortly before midnight, he was driving westbound on Roosevelt Road with Hill as his passenger. As he approached the intersection with Union Street, the light at the intersection changed from red to green in his direction of travel and he continued to drive west without slowing. Woods was unable to see the intersection from further than a half-block away because the overpass "was like a hill" and he could not see anything "directly in front of [him] a block beyond." As he approached the intersection, he observed a white SUV on his righthand side drive forward slightly into the intersection, but then it stopped. Woods continued driving and the "next thing" he knew, he collided with Commander Johnson's vehicle. Woods did not see a police vehicle or any other vehicle cross over Roosevelt Road from Union Street travelling south before the accident. Woods did not hear any sirens or see any emergency lights prior to the collision and did not observe any vehicles travelling westbound on Roosevelt Road that were stopped at the intersection with Union Street. Woods testified that some shrubbery and bushes obscured his view of Union Street from

Roosevelt Road and he was only able to see the white SUV because it pulled forward slightly into the intersection. Woods testified he was driving 30 miles per hour at the time of the collision.

¶ 10    Gilberto Ruiz testified that he was sitting at a red light on Union Street waiting to make a right turn onto Roosevelt Road when he observed a black vehicle drive through the red light heading south. A police vehicle followed the black vehicle through the red light. After those vehicles passed, Ruiz started to move his vehicle out of the way because he heard police sirens. Ruiz testified that "within two to three seconds after the first police car that passed by was when the impact happened." Ruiz testified that he did not see the actual impact, but he heard it. He could tell, however, that Commander Johnson's police vehicle had activated its emergency lights before entering the intersection. Maritza Ruiz (Maritza), Ruiz's wife, who was sitting in the rear passenger seat of Ruiz's vehicle, testified that she observed Commander Johnson's unmarked police vehicle activate its emergency lights, but did not recall whether the vehicle also activated its siren. Maritza further testified that Commander Johnson's vehicle stopped at the edge of the intersection before proceeding into the intersection of Roosevelt Road and Union Street.

¶ 11    Marcus Reynolds testified that he was driving east on Roosevelt Road when the light at the intersection with Union Street turned green. Reynolds observed a vehicle drive through the red light on Union Street and cross over Roosevelt Road. Reynolds then observed a marked police vehicle with its emergency lights and siren activated follow the vehicle through the intersection. Reynolds noticed an unmarked police vehicle that was facing south at the intersection on Union Street activate its emergency lights and "hit [his siren] a couple of times." The other vehicles at the intersection began to move out of the way for the police vehicle. Reynolds noted that none of the vehicles in the eastbound traffic on Roosevelt Road crossed the intersection even though there was a green light because they could see the police vehicles. Reynolds then saw the collision

between the Commander Johnson's police vehicle and the vehicle Woods was driving. Reynolds noted that four other police vehicles drove through the intersection after the collision.

¶ 12   Defendants filed a motion for summary judgment in which they contended that Commander Johnson and the City were immune from liability pursuant to section 2-202 of the Act. Section 2-202 of the Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." Defendants asserted that the uncontroverted evidence showed that Commander Johnson was assisting in a police pursuit and was therefore executing and enforcing the law at the time of collision. Defendants asserted that the City and Commander Johnson were therefore immune from liability with regard to negligent conduct and that defendants could be held liable only if Commander Johnson acted willfully and wantonly. Defendants asserted that the evidence presented demonstrated that Commander Johnson did not act willfully and wantonly as that phrase was defined in the Act and, therefore, asked the court to dismiss plaintiffs' complaint.

¶ 13   In response, plaintiffs asserted that there was a genuine issue of material fact as to whether Commander Johnson was executing and enforcing the law at the time of the collision. Plaintiffs further asserted that there was a genuine issue of material fact as to whether Commander Johnson's conduct was willful and wanton.

¶ 14   In granting defendants' motion for summary judgment, the circuit court found the depositions, together with a video of the collision, showed that Commander Johnson was operating a police vehicle when he witnessed a police pursuit while stopped at a red light. Commander Johnson then engaged the vehicle's emergency lights and "possibly" the sirens and moved into the intersection to control traffic where Woods's vehicle collided with Commander Johnson's police vehicle. The court found that these facts supported only one conclusion: "that as a Police

Commander who witnessed a live police pursuit, Commander Johnson executed or enforced the law by turning on his emergency lights and trying to control traffic." The court noted that it was during this process of executing and enforcing the law that the collision occurred. The court found that Commander Johnson's conduct was not willful and wanton because no reasonable trier of fact could find that Commander Johnson's actions showed utter indifference or conscious disregard for the safety of others or their property. As such, the court found that, as a matter of law, Commander Johnson's conduct occurred while he was executing and enforcing the law and was not willful and wanton. The court concluded that Commander Johnson's conduct therefore fell within the scope of section 2-202 of the Act and that he and the City were immunized from liability. Accordingly, the court granted defendants' motion for summary judgment. This appeal follows.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, plaintiffs assert that the court erred in finding that, as a matter of law, Commander Johnson was executing and enforcing the law at the time of the crash and that his conduct was not willful and wanton. Plaintiffs assert that there were questions of fact regarding whether Commander Johnson was attempting to join the pursuit or whether he was merely attempting to control traffic as he testified. Plaintiffs further assert that there was a question of fact as to whether Commander Johnson activated the siren on his vehicle prior to entering the intersection and whether Commander Johnson could properly see cross-traffic on Roosevelt Road before he entered the intersection. Plaintiffs assert that these factual questions precluded the court's entry of summary judgment.

¶ 17    Summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Carney v. Union*

*Pacific R.R. Co.*, 2016 IL 118984, ¶ 25. In determining whether a genuine issue of material fact exists, the court construes the pleadings, depositions, and affidavits against the moving party and liberally in favor of the opposing party. *Carney*, 2016 IL 118984, ¶ 25 (citing *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49). A genuine issue of material fact exists "where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Mashal*, 2012 IL 112341, ¶ 49. We review summary judgment rulings *de novo*. *Carney*, 2016 IL 118984, ¶ 25 (citing *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13).

¶ 18                              A. Executing and Enforcing

¶ 19    Plaintiffs first contend that the court erred in finding as a matter of law that Commander Johnson was executing and enforcing the law at the time of crash. Plaintiffs assert that whether a police officer is executing and enforcing the law is a factual determination reserved for the trier of fact. Plaintiffs contend that the circuit court ignored evidence that showed that Commander Johnson was not executing and enforcing the law because there was no objective requirement that he do so and that the court ignored contradictions in Commander Johnson's deposition testimony and the police reports of the collision.

¶ 20    Section 2-202 of the Act provides that "[a] public employee is not liable for his act or omission in the *execution or enforcement* of any law unless such act or omission constitutes willful and wanton conduct." (Emphasis added.) 745 ILCS 10/2-202 (West 2016). Relatedly, Section 2-109 of the Act provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2016). Immunity is available under these provisions where a public employee is "engaged in a course of conduct designed to carry out or put into effect any law." *Fitzpatrick v. City of Chicago*, 112 Ill.

2d 211, 221 (1986). However, immunity does not attach where an officer is engaged in routine elements of his official duties, such as conducting routine patrol. *Bruecks v. County of Lake*, 276 Ill. App. 3d 567, 568 (1995) (*citing Leaks v. City of Chicago*, 238 Ill. App. 3d 12 (1992)). "The question of whether a police officer is executing and enforcing the law is a factual determination which must be made in light of the circumstances involved in each case. [citation] However, where the evidence is undisputed or susceptible to only one possible interpretation, the question may be decided as a matter of law." *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 388 (2007).

¶ 21    Here, we find, contrary to the circuit court's conclusion, that the evidence in this case was not undisputed or susceptible to only one possible interpretation. For instance, police reports of the incident indicate that Commander Johnson told the investigating officer that he intended to become involved in the pursuit. At his deposition, however, Commander Johnson testified that he intended only to provide traffic control. Although Commander's Johnson's role in the pursuit is uncertain, what is clear is that he was not assigned to participate in the pursuit or provide traffic control, nor did he know whether his assistance was even necessary. Commander Johnson testified that as a commander in the CPD, he could assign himself to participate in the pursuit. He testified, however, that in such circumstances, he would put out a radio call announcing his involvement. He acknowledged at his deposition that he did not do so in this case. Indeed, Commander Johnson's testimony shows that he did not inform anyone of his intention to join the pursuit or provide traffic control and no one involved in the pursuit requested his assistance. This court has found that an officer was not executing and enforcing the law where "there was no specific indication in the record that traffic control was actually required or requested or that the officers engaged in the actual pursuit required or requested backup." *Hudson*, 378 Ill. App. 3d at 392.

¶ 22    Commander Johnson also testified that before he saw the pursuit drive past him, he was on routine patrol duty. As noted, immunity does not attach where an officer is engaged in routine elements of his official duties, such as conducting routine patrol. *Bruecks*, 276 Ill. App. 3d at 568. Thus, whether immunity attached in this case depends on whether Commander Johnson's role changed from routine patrol to another non-routine element of his official duties prior to the collision such that he was "engaged in a course of conduct designed to carry out or put into effect any law." *Fitzpatrick*, 112 Ill. 2d at 221. Such a question is a factual determination reserved for the trier of fact. See *Hudson*, 378 Ill. App. 3d at 388-89 (collecting authority). As noted, Commander Johnson was not assigned to participate in the pursuit or provide traffic control, he did not announce that he was going to participate in the pursuit or provide traffic control, and he did not know whether traffic control was even necessary because he did not know if there were more emergency vehicles involved in the pursuit that would drive through the intersection. We therefore find that there were genuine issues of material fact that precluded the trial court's entry of summary judgment on the issue of whether Commander Johnson was executing and enforcing the law at the time of the collision. We express no opinion regarding the merits of plaintiffs' claim or Commander Johnson's immunity under section 2-202, but hold that the court's entry of summary judgment was improper in light of these factual issues.

¶ 23                        B. Willful and Wanton

¶ 24    We next address plaintiffs' contention that the court erred in finding as a matter of law that Commander Johnson did not act willfully and wantonly at the time of the incident. As noted, section 2-202 of the Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law *unless such act or omission constitutes willful and wanton conduct*." (Emphasis added.) (745 ILCS 10/2-202 (West 2016). Plaintiffs assert that Commander

Johnson acted willfully and wantonly because the evidence showed that he could not see westbound traffic on Roosevelt Road before he drove into the intersection. Plaintiffs contend that Commander Johnson acknowledged that it was not safe for him to enter the intersection and that his conduct violated a CPD order regarding when a police officer may enter an intersection against a red light. Plaintiffs also assert that there is a genuine issue of material fact regarding whether Commander Johnson activated his siren before entering the intersection.

¶ 25    "Willful and wanton conduct" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2016). Ordinarily, whether a public official's conduct is willful and wanton is a question of fact for the jury. *Bielema ex rel. Bielema v. River Bend Community School District No. 2*, 2013 IL App (3d) 120808, ¶ 12. "However, the court may determine as a matter of law whether conduct is willful and wanton if the evidence so overwhelmingly favors one party that a contrary determination cannot stand." (Internal quotation marks omitted.) *Id.* (quoting *Brown v. Chicago Park District*, 220 Ill. App. 3d 940, 943 (1991)). Here, we cannot say that the evidence presented so overwhelming favors defendants such that a contrary determination could not stand.

¶ 26    Instead, the factual record reveals numerous inconstancies, discrepancies, and disputed issues of material fact. For instance, at his deposition, Commander Johnson testified that he was only attempting to provide traffic control. The police report and crash report from the incident, however, indicate that Commander Johnson was "trying to assist in a vehicle pursuit" and "actively in assistance of a pursuit." The distinction is significant because it informs which Chicago Police Department General Orders were applicable to Commander Johnson's conduct. At Commander Johnson's deposition, plaintiffs presented two Chicago Police General Orders: G03-03-01 and

G03-03-02. General Order G03-03-01 concerns the operation of emergency vehicles in pursuits. At his deposition, Commander Johnson testified that the only section of General Order G03-03-01 that applied to him was Section X. At the time of his deposition, Section X of the General Order G03-03-01concerned the district commander's responsibilities after the pursuit to review and prepare a report detailing the pursuit. General Order G03-03-01 sec. X (now sec. XII). Essentially, Commander Johnson testified that because he was not part of the pursuit, General Order G03-03-01 did not apply to his operation of his police vehicle at the time of the incident. The discrepancies, however, between his testimony regarding his conduct and the police reports regarding the incident create a genuine issue of material fact as to whether Commander Johnson was part of the pursuit and, thus, whether General Order G03-03-01 applied to him.

¶ 27    There is also insufficient evidence in the record to conclude, as a matter of law, that General Order G03-03-01 did not apply to Commander Johnson even if he were only planning to provide traffic control as he testified. Commander Johnson indicated that he was providing traffic control to aid with a police pursuit. A reasonable trier of fact could find that in such a situation he was therefore required to comply with General Order G03-03-01, which governs emergency vehicle operation in pursuits. If the trier of fact did so conclude, it would then be required to make the factual determination of whether Commander Johnson complied with the provisions of that general order. For instance, the order requires the pursuing officers to conduct a balancing test in order to determine whether the "necessity to immediately apprehend the fleeing suspect outweighs the level of inherent danger created by a motor vehicle pursuit." General Order G03-03-01 sec. II (now sec. IV). Commander Johnson testified that he conducted a "balancing test" prior to making the determination to drive into the intersection, but the factors he testified that he considered, such as the road conditions, the level of traffic, the weather, and the necessity to protect the public,

encompassed only some of the factors outlined in the general order. A trier of fact would thus be required to determine whether Commander Johnson's balancing test complied with the test set out in the general order. We recognize that a police officer's violation of a policy or general order is not *per se* willful and wanton conduct, but it is evidence that a trier of fact may consider along with all the other evidence presented in the case in determining whether an officer acted willfully and wantonly. *Morton v. City of Chicago*, 286 Ill. App. 3d 444, 454 (1997).

¶ 28     Even assuming General Order G03-03-01 did not apply as a matter of law, there was a question of fact regarding whether Commander Johnson complied with General Order G03-03-02, which concerns the operation of police vehicles in nonpursuit situations. Commander Johnson testified that General Order G03-03-02 applied to him and was a "standing order." Plaintiffs assert that Commander Johnson violated the portion of the order that requires officers engaged in nonpursuit emergency vehicle operation to "proceed through intersections and traffic signals only after determining it is reasonable and safe to proceed." General Order G03-03-02 sec. III(A)(5), (B)(2)[1]. At his deposition, Commander Johnson acknowledged that he could not see westbound traffic on Roosevelt Road before he entered the intersection because his view was obstructed by other vehicles, a fence, and shrubbery. Despite his inability to see cross-traffic, however, Commander Johnson drove into the intersection where his vehicle collided with the vehicle Woods was driving. Commander Johnson testified that his actions were necessary to protect the public, however, there was no evidence presented regarding whether Commander Johnson's actions were,

---

[1]We note that section III(A) of General Order G03-03-02 applies to marked police vehicles, while section III(B) applies to unmarked police vehicles. Section III(B)(2) provides that officers driving unmarked vehicles, as Commander Johnson was in this case, must "comply with the provisions of items II [*sic*] A-2 through 7 of this directive" in nonpursuit situations. Although this provision refers to section II of the general order rather than section III, it is clear from the context that this provision is intended to refer to section III(A), thus setting similar standards for the operation of marked and unmarked police vehicles.

in fact, necessary, or whether it was reasonable for him to believe so. For instance, Commander Johnson testified that he did not know whether additional pursuit vehicles would be driving through the intersection. Because the fleeing vehicle and the pursuit vehicle had already driven through the intersection, there would be no need for Commander Johnson to provide traffic control if no other emergency vehicles were driving through the intersection.

¶ 29    Commander Johnson could have mitigated the risks of driving into the intersection without the ability to see westbound traffic by activating his vehicle's siren. However, there was conflicting evidence regarding whether Commander Johnson activated his siren. Commander Johnson testified that he activated his siren, but Woods testified that he did not hear a siren. Ruiz testified that he heard police sirens, but did not specify they came from Commander Johnson's vehicle, and his wife, Maritza, testified that she did not recall hearing sirens. Reynolds testified that he heard Commander Johnson's siren, but testified that Commander Johnson did not run the siren continuously and only "hit [his siren] a couple of times." Moreover, a CPD report chronicling the collision contained conflicting information regarding whether Commander Johnson's siren was activated. The report in question, a Department Vehicle Traffic Crash or Damage Report, memorializes the collision and is signed by Commander Johnson. In the section of the report for describing the crash, someone[2] wrote: "Trying to assist a vehicle pursuit, vehicle entered intersection with lights and *siren* activated at which point vehicle travelling westbound struck the driver's side of the car." (Emphasis added.) However, in a separate section of the report, detailing which emergency equipment was used, the boxes next to "light bar" and "flashing light" are marked, but the box next to "siren" is not. Commander Johnson testified that he did not fill out the

---

[2]Commander Johnson testified that he did not recognize the handwriting on the crash report.

report, but that when he signed it, he did not change any of the information contained on the report because "[t]he report had already been submitted in review" and he "would not alter [his] official document." However, it remains unclear why Commander Johnson would sign off on the report given the inconsistent information about whether he activated his vehicle's siren.

¶ 30    Accordingly, we find that there were genuine issues of material fact that precluded the trial court's entry of summary judgment on the issue of whether Commander Johnson acted willfully and wantonly at the time of the incident. As with our conclusion on the "executing and enforcing the law" element of section 2-202, we express no opinion on the merits of plaintiffs' claim or Commander Johnson's immunity under section 2-202, but we find that the court's entry of summary judgment was improper given the factual issues identified above.

¶ 31                                   III. CONCLUSION

¶ 32    For the reasons stated, we reverse the judgment of the circuit court of Cook County and remand for further proceedings consistent with this order.

¶ 33    Reversed and remanded.