2020 IL App (1st) 191347-U

SIXTH DIVISION
November 13, 2020

No. 1-19-1347

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

## IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| KRZYSZTOF OZOG, | ) | Appeal from the |
| | ) | Circuit Court of Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 16 L 11877 |
| | ) | |
| BEE QUALITY, INC., and | ) | Honorable Christopher Lawler, |
| U.S. EXTERIOR BY SEIDEL d/b/a | ) | Judge, Presiding |
| U.S. EXTERIOR, INC., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Bee Quality, Inc., Defendant-Appellee). | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

## ORDER

¶ 1    *Held:* The circuit court properly granted summary judgment in favor of defendant where plaintiff failed to raise a genuine issue of material fact with respect to his claims under sections 414 and 343 of the Restatement (Second) of Torts (1965); affirmed.

¶ 2    This case involves the alleged negligence committed by defendant, Bee Quality, Inc., that caused injury to plaintiff, Krzysztof Ozog, after he fell off a roof while performing roofing work on a construction project. Plaintiff appeals an order of the circuit court that granted summary judgment in favor of defendant. On appeal, plaintiff contends that the court erred in granting

summary judgment because there were genuine issues of material fact as to whether defendant had control over plaintiff's work under section 414 of the Restatement (Second) of Torts and whether defendant is liable to plaintiff based on a premises liability claim under section 343 of the Restatement (Second) of Torts. Plaintiff also asserts that summary judgment was improper because the oral contract between defendant and plaintiff violated Illinois law. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiff's first amended complaint alleged two claims based on negligence against defendant Bee Quality (Counts I and II) and two claims based on negligence against U.S. Exterior by Seidel (U.S. Exterior), the general contractor for the project (Counts III and IV). U.S. Exterior entered a settlement agreement with plaintiff and is not a subject of this appeal.

¶ 5     Plaintiff alleged in both counts against defendant that defendant was a subcontractor on a construction project located at 265 Ingram Street, in Northfield, Illinois and that plaintiff was an independent contractor retained by defendant to perform roofing work on the project. Plaintiff alleged that, during the relevant time, he did business informally as "Kris Ozog Construction," which was not a legal entity, and that he was not an employee of Kris Ozog Construction.

¶ 6     Count I was brought under section 414 of the Restatement (Restatement (Second) of Torts § 414 (1965)), which states:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

Plaintiff's complaint alleged as follows. Defendant retained plaintiff as an independent contractor to perform roofing work at the project. Defendant coordinated the roofing project,

2

designated various work methods, and had authority and control over the project. Defendant required and/or permitted plaintiff to work on the roof without fall protection and when the roof was wet and slippery, which created a fall hazard. Defendant had a duty to manage, supervise, and control the project and defendant was negligent when it failed to, among other things, supervise the site, erect certain fall protections that were necessary to prevent injury to persons on the roof, and adequately protect against recognized fall hazards. As a direct and proximate cause of defendant's acts, plaintiff fell off the roof at the project when performing his work.

¶ 7    Count II of the complaint alleged a claim for negligence based on section 343 of the Restatement (Second) of Torts, which states:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."

Restatement (Second) of Torts § 343 (1965)

Plaintiff alleged as follows. Defendant owned, occupied possessed, and/or controlled the areas of the construction site where plaintiff worked and had a duty to keep and maintain the premises in a reasonably safe condition. Defendant permitted construction work to be done on the roof when it was wet and slippery and without requiring the workers to wear fall protection. Defendant committed careless and negligent acts when it, *inter alia*, allowed work to be performed on a roof that it knew or should have known presented a fall hazard and when it failed to maintain the

roof in a safe manner, warn the plaintiff of the danger condition of the premises that had a roof with no fall protection, and ensure plaintiff was provided with a dry walking surface on which to work. Defendant improperly operated, managed and controlled the premises so that as a direct and proximate result, plaintiff was injured when he fell from the roof.

¶ 8    Following discovery, defendant filed a motion for summary judgment and attached the deposition transcripts of the following witnesses: plaintiff; defendant's owner, Petro Kholiava; John Svenson, the owner of the home that was the subject of the construction project; Udo Seidel, the owner of U.S. Exterior; and Krzysztof Bak (Bak), Marcin Kulikowski (Kulikowski), and Andriy Ohirko (Ohirko), who were other subcontractors on the roofing project. Plaintiff, Bak, Kulikowski, and Ohirko testified about their experience on previous jobs with defendant as well as about their work on the roofing project with plaintiff.

¶ 9                          Deposition Testimony

¶ 10                          Background

¶ 11   Plaintiff's accident occurred on July 16, 2015, when he was working on a roofing project at the home of John Svenson located at 265 Ingram Street, in Northfield, Illinois (Ingram project or job site). In July 2015, Svenson entered a contract with Udo Seidel from U.S. Exterior, a general contractor, to tear off the roof and install shingles on his house and garage. U.S. Exterior obtained the permit from the Village of Northfield for the project. Svenson paid U.S. Exterior for the roofing work and only communicated with Seidel regarding the project.

¶ 12   U.S. Exterior hired defendant as a subcontractor to perform the roofing work on Svenson's home and garage. Petro Kholiava (Kholiava), who was defendant's owner, hired four subcontractors to perform the roofing work. Defendant had oral agreements with the subcontractors and hired them through their own respective company, which included Bak, who

4

owned K. Bak Construction, Kulikowski, who owned Lotse Corporation, and Ohirko, who owned Ohirko Construction, Inc. Kholiava testified that defendant hired plaintiff through the company name "Kris Ozog Construction." Plaintiff testified that, although he used the name "Krzysztof Ozog Construction," he never created it as an entity with the Illinois Secretary of State and defendant hired him on the Ingram project as an individual.

¶ 13                                    Defendant's Practices

¶ 14      Kholiava, who was defendant's owner, testified about defendant's general practices. Kholiava testified that defendant had existed since 2012 and did not have any employees. Defendant retained independent contractors for its jobs. In Kholiava's first meeting with a subcontractor before a project, he would go over the materials and the manufacturer's installation instructions, which he expected the subcontractors to follow. The manufacturer's instructions included certain requirements such as the number of nails per shingle and the amount of space between each shingle. Defendant did not provide any training for the subcontractors or give them uniforms to wear. Defendant provided large equipment as well as safety equipment at the job sites. Defendant's contractors were required to bring their own small tools.

¶ 15      Kholiava did not give defendant's subcontractors any safety instructions and told them that safety was their responsibility. Defendant's subcontractors were expected to wear safety equipment and to follow safety rules, which included following OSHA regulations. Defendant also expected the subcontractors to complete the work in a workman like manner and to follow the manufacturer's specifications. The means and methods of how the subcontractors performed the work was up to them. Kholiava never told the subcontractors what materials to use, as that was dictated by the homeowners. Kholiava did not typically inspect the subcontractor's work or go on the roof when the work was in progress. As the general contractor, he would expect the

No. 1-19-1347

subcontractors to follow his direction. If he saw a subcontractor doing something incorrectly, he would remind them to follow the manufacturer's instructions. With respect to weather conditions, Kholiava testified that "[i]f it is scheduled, it's up to [the subcontractor] to decide if they are starting a job or stopping a job." He had never told any subcontractor to keep working when it rained and did not have control over when the contractors started a job.

¶ 16                              Plaintiff and Defendant's Relationship

¶ 17    Plaintiff testified that he started working in the roofing business in 2003. Between 2008 and 2014, he operated under the names "Krzysztof Ozog Construction," which he did not establish as a company. Plaintiff started working with defendant in February 2015. Kholiava expected plaintiff to have a "business" and required him to obtain a worker's compensation insurance policy. Before defendant hired plaintiff, plaintiff provided Kholiava with a certificate of insurance, which listed the name Kris Ozog Construction. Plaintiff and defendant did not have a written contract for any of the jobs. Kholiava completed a 1099 form for plaintiff.

¶ 18                                      Ingram Project

¶ 19    On the date of the accident, the subcontractors were installing shingles on the garage roof at the Ingram project. U.S. Exterior, the general contractor, ordered and paid for the materials. Seidel, the owner of U.S. Exterior, provided defendant information about the manufacturer materials on a worksheet, which defendant was expected to follow. Defendant hired plaintiff, Bak, Kulikowski, and Ohirko as subcontractors to complete the roofing project. Defendant did not have a written contract with the subcontractors for the project. Defendant gave the information on U.S. Exterior's worksheet to the subcontractors. Defendant was responsible to complete the job to the manufacturer's specifications and for the subcontractors to be paid.

6

Kholiava expected the subcontractors to follow normal safety procedures. Defendant did not have a safety monitor and did not have a safety meeting with the subcontractors.

¶ 20    There was no fencing installed at the Ingram project to exclude people from the property. Defendant did not own the Ingram project and had no intention to possess the job site or exclude people from it. Svenson did not intend to let any contractor own or possess his home during the project.

¶ 21    Defendant provided the larger equipment, which included the ladders and the machine that carried shingles to the roof. Defendant also provided tools to install shingles and safety equipment, including safety harnesses, lanyards, roof bracket kits, and fall protection kits. The safety equipment was available for everyone to use. The subcontractors brought their own small tools to the site. Plaintiff brought his own nail gun, nails, hammer, and tool belt.

¶ 22    Kholiava testified that plaintiff had previous experience with the same type of roofing job as the Ingram project, so he did not give plaintiff any special instructions. Kholiava testified that, at his initial meeting with plaintiff, Kholiava made clear that plaintiff was responsible for his safety on the job site.

¶ 23    Plaintiff testified that, on the first day of the project the people present included "our entire crew and possibly there was also Peter. Actually, I am sure that he was there." Bak testified that Kholiava was never present at the project. Kulikowski testified that he did not recall Kholiava being there on the first date and Ohirko could not remember.

¶ 24    Plaintiff testified that defendant did not need to give him special instructions on how to install shingles because he already knew how to do it, the process was simple, and he did a good job on roof installation work. Plaintiff testified that he was competent and experienced and had

7

performed hundreds of jobs similar to the Ingram project. He did not need anyone to supervise him.

¶ 25    Bak testified that the subcontractors decided the actual methods for the shingle installation and Kholiava did not provide them with specific instructions. Bak testified that the subcontractors were responsible for themselves and that none of them had made complaints about any unsafe conditions at the job site.

¶ 26    Kulikowski similarly testified that Kholiava did not give him any instructions on the means and methods of how to perform the roofing work at the Ingram project and the subcontractors were free to perform the methods as they saw fit. Kulikowski testified that he followed the manufacturer's specifications on how to install the materials and that the subcontractors were responsible for their own safety and supervised themselves. Ohirko testified that he did not receive any specific directions from Kholiava on how to perform the work on the Ingram project and that it was the subcontractor's responsibility to wear safety equipment.

¶ 27                            Date of the Accident - July 16, 2015

¶ 28    On July 16, 2015, the third day on the Ingram project, the subcontractors arrived at the job site at 7 a.m. Kholiava and the other subcontractors testified that Kholiava was not at the job site on the date of the accident. The task that day was to install shingles on the garage roof. At some point in the morning, the subcontractors stopped working on the roof because it started to rain.

¶ 29    Plaintiff testified that rain is a hazard because it causes the roof to be slippery. He described the rain that day as "light" with breaks and that the common practice for roofing work with this type of rain was to wait and then continue after the rain stopped. During the rain break, Kulikowski and Bak went to the store.

¶ 30    Plaintiff testified that he waited for about an hour or a half-hour before he determined the roof was dry and he could get back on it. He testified that he knew the roof was dry by looking at it. He also testified that the roof was not totally dry when he returned to it and that he could have waited until he knew it was dry. Plaintiff testified that no one forced him to get back on the roof and he had worked in similar weather conditions in the past. He testified that the decision to return to the roof after rain was usually made by all the subcontractors. Ohirko testified that he made the decision to return to the roof with defendant and that they had waited about 15 to 20 minutes to return to the roof after it rained. According to Ohirko, when they returned to the roof, they could walk normal and it was not slippery. Bak and Kulikowski were not present at the job site at this time.

¶ 31    When plaintiff and Ohirko returned to the roof after the break, they did not wear or use any safety equipment and continued with the shingle installation project. For this project they would retrieve a box of shingles, which weighed about 75 pounds, from a machine that carried the shingles from the ground to the roof and then would carry the boxes to different locations on the roof. About a half-hour after they had been on the roof, plaintiff took a box of the shingles from the machine and placed it under his arms. He then turned and his foot slipped, after which he lost his balance and fell off the roof, which was about 13 feet above ground. Plaintiff testified that he was not distracted when he fell, and the box of shingles did not obstruct his view. Plaintiff testified that he slipped on the roof because it was wet where he stepped and, if he would have let go of the box of shingles, it would not have prevented him from falling, as the roof was wet.

¶ 32                    Safety Equipment at the Ingram Project

¶ 33     Kholiava testified that he was not present at the job site on the date of the accident and did not know about unsafe conditions there. Kholiava did not know what portion of the roof the workers were working on when the accident occurred, that it had rained that day, or that plaintiff was not wearing fall protection.

¶ 34     The subcontractors and plaintiff testified that the use of safety equipment made the task of moving shingles around the roof difficult. Plaintiff testified the garage roof was not steep, and he generally did not use safety equipment for these types of roofs. Bak testified that, based on the slope of the garage roof, it would have been his custom and practice not to use safety equipment and Kulikowski testified that they did not need to wear fall protection because, as an experienced roofer, he could walk on the roof.

¶ 35     Plaintiff testified that defendant would tell the subcontractors when they should wear a safety harness and, on the date of the accident, nobody told him to do so. It was plaintiff's practice not to wear any safety equipment unless someone told him to wear it. Plaintiff acknowledged that nothing prevented him from wearing safety equipment and it was his decision whether to wear the equipment. Plaintiff also acknowledged that he knew the safety risks of rain and that he knew that if he did not wear a harness or lanyard there was a risk that he could fall off the roof.  Plaintiff never made any complaints about safety concerns at the Ingram project. He acknowledged that he was responsible for identifying any safety hazards and that he did not identify any hazards. Kulikowski and Ohirko testified that the decision of when to wear fall protection was up to each subcontractor.

¶ 36                                    Safety Videos

¶ 37     Kholiava testified that, after the accident, he had defendant's subcontractors watch safety videos to "liquidate the possibility that we would ever have this happen again." He wanted to

avoid another fall and make sure they knew the requirements. Bak and Kulikowski testified that, after the accident, they went to Kholiava's house to watch the safety videos with about six to eight other subcontractors. Kulikowski testified that, after plaintiff's fall, Kholiava recommended to defendant's subcontractors that they wear safety harnesses and Ohirko testified that Kholiava told the subcontractors that they needed to use safety equipment.

¶ 38                    Plaintiff and Subcontractors' Previous Jobs with Defendant

¶ 39                              Plaintiff's Testimony

¶ 40    Plaintiff testified that, at previous jobs with defendant before the Ingram project, Kholiava would come to the site every day to check on the quality and progress of the work. Kholiava would also get on the roof and direct work if necessary. Kholiava had the authority to change the way that work was being done and he required quality work. If Kholiava would have come to a job site and observed plaintiff installing a shingle improperly, he would have asked plaintiff to change it and plaintiff would have followed that instruction.

¶ 41    Plaintiff testified that it was up to Kholiava when the workers needed to wear fall protection and, if Kholiava did not tell them to wear fall protection, they would not wear it. At one previous job site before the Ingram project, plaintiff was not using or wearing safety equipment, and Kholiava did not tell him to wear or use that equipment. If Kholiava had told him to wear or use the fall protection, plaintiff would have done so. There were times on other projects when Kholiava specifically required him to wear safety harnesses.

¶ 42                              Kholiava Testimony

¶ 43    Kholiava testified that he had previously hired plaintiff as a subcontractor and had seen him work about a dozen times before the Ingram project. Kholiava testified that he did not recall a time when he saw plaintiff not wearing fall protection. If he had seen plaintiff not wearing fall

11

protection, he would have told him it was not safe. He would not have imposed a safety requirement because it was plaintiff's decision to wear fall protection. Kholiava could not remember any safety concerns at previous job sites with plaintiff. Kholiava never gave any subcontractors a safety manual or safety instructions. He never went to a job site to make sure the workers were wearing fall protection. Kholiava would not tell his subcontractors when to start or stop working but would make suggestions based on the requirements set by the city in which the project was located.

¶ 44                                    Subcontractors' Testimony

¶ 45     Defendant had retained Bak, Kulikowski, and Ohirko on previous projects before the Ingram project. He never had a written contact with any of his subcontractors.

¶ 46     Bak testified that Kholiava required and expected the subcontractors to wear fall protection and use safety equipment while working on a roof. He testified that about two to three years before the trial, defendant had a company-wide safety training, which included how to use safety harnesses and lanyards. On previous job sites before the Ingram project, if Kholiava had asked Bak to change something or use safety equipment, Bak would have followed that instruction. On one previous job site, Kholiava told plaintiff to place more space between the shingles and, at another previous job about three months before the Ingram project, Bak and plaintiff were not wearing a harness or lanyard. Kholiava told the men to wear the safety protection and they followed his instruction. Bak testified that he understood that he was responsible for his own safety and that it was his own decision as to when to use fall protection and safety equipment.

¶ 47     Kulikowski testified that, on previous job sites, Kholiava would tell the subcontractors to follow the manufacturer's instructions and would come to a job site to examine the progress and

quality. If Kholiava had instructed Kulikowski to wear a safety harness, he was required to follow that instruction. Kulikowski testified that Kholiava wanted him to know the OSHA rules "because OSHA can come on the job and give us ticket" and he expected Kulikowski to know the rules. Kulikowski testified that, on a previous job before the Ingram project, Kholiava asked the subcontractors to correct the spacing between the shingles and to follow the manufacturer rules. On another previous project, Kholiava instructed the subcontractors to correct the aluminum that he saw flashing between the shingles. Kulikowski testified that there were times on previous jobs when Kholiava saw the subcontractors carrying shingles without using or wearing safety equipment and did not tell them to use or wear that equipment.

¶ 48    Ohirko testified that Kholiava would give general suggestions about safety, but it was up to the subcontractors to follow his suggestions. Kholiava never told Ohirko how to perform the work and Ohirko had discretion regarding the methods he used for the roofing projects. Each subcontractor on Bee Quality's jobs was his own supervisor and responsible for himself.

¶ 49                                    Procedural History

¶ 50    Before U.S. Exterior and plaintiff entered a settlement agreement, U.S. Exterior filed a third-party complaint for contribution against Kris Ozog Construction, alleging that Kris Ozog Construction was plaintiff's employer and was responsible for plaintiff's work and safety on the project. U.S. Exterior asserted that, to the extent it was liable, it was entitled to contribution against Kris Ozog Construction.

¶ 51    Plaintiff filed a motion to dismiss the third-party complaint for contribution, arguing that he was a sole proprietor, that Kris Ozog Construction was not a valid legal entity, and that plaintiff acted at all times in his individual capacity and used that name as trade name. He argued that Kris Ozog Construction could not be responsible for plaintiff's injuries because it was not a

13

legal entity with the capacity to be sued. Plaintiff attached an affidavit signed by him to his motion. In that affidavit, he averred that, in March 2015, defendant retained him in his induvial capacity for the Ingram project and that from March 2015 through July 16, 2015, he was a sole proprietor performing roofing work under the trade name "Kris Ozog Construction." He did not file anything with the Illinois Secretary of State to incorporate Kris Ozog Construction.

¶ 52    The circuit court granted plaintiff's motion to dismiss U.S. Exterior's contribution claim with prejudice. As discussed above, following discovery, defendant filed a motion for summary judgment.

¶ 53    Defendant argued that it did not owe plaintiff a duty care. It argued that section 414 of the Restatement (Second) of Torts did not apply to independent contractors like plaintiff working in his individual capacity. It further argued that, even if section 414 did apply to plaintiff, summary judgment was proper because defendant did not retain sufficient control over the means and methods of plaintiff's work and defendant did not have notice of any alleged unsafe condition or work practices that existed on the date of the accident. Defendant argued that summary judgment was proper on plaintiff's premises liability claim under section 343 of the Restatement (Second) of Torts because defendant did not own or possess the land and did not have notice of any alleged unsafe condition on the land.

¶ 54    In response, plaintiff argued that section 414 applied to plaintiff, defendant retained sufficient control over the manner of plaintiff's work, and defendant had notice of the unreasonably dangerous manner of work being performed, including that the roofers were not wearing fall protection on defendant's job sites. Plaintiff argued that defendant owed him a duty of care owed to invitees under section 343 and that a reasonable jury could find that defendant possessed the Ingram job site, was aware of the dangerous conditions, and failed to remedy the

hazards. In plaintiff's facts section of his response, he referred to his construction expert's report, which was attached to his response. Plaintiff did not include an argument regarding this report in his response.

¶ 55    The circuit court granted defendant's motion for summary judgment on both counts. The record on appeal does not contain a transcript from that hearing. In the court's written order, with respect to section 414, it concluded that a reasonable trier of fact could not conclude that defendant retained sufficient control to negate plaintiff's status as an independent contractor. The court noted that the record did not show that defendant directed or required plaintiff to return to the roof, but that plaintiff chose to return and that safety equipment was available to use and plaintiff chose not to use it.

¶ 56    With respect to section 343, the court concluded that a reasonable trier of fact could not infer that defendant had notice of any unsafe condition at the job site. In doing so, it noted that the deposition testimony showed that Bee Quality, through its agents, were not present on the job site on the date of the accident, that defendant did not direct plaintiff to return to the roof, that defendant provided safety equipment which was available to use, and that plaintiff, an independent contractor, chose not to use the safety equipment and to return to the roof after he knew it rained.

¶ 57    Plaintiff filed a motion to reconsider, arguing, *inter alia*, that neither plaintiff nor the other subcontractors were licensed with the State of Illinois and that, under the Illinois Roofing Act (225 ILCS 335/1 *et seq*. (West 2018)), defendant could not enter a contract with plaintiff because a seller of roofing services may only subcontract those services to licensed roofers. Plaintiff asserted that, therefore, the Illinois Roofing Act voided any purported contract he had with defendant and that defendant retained control over, and was the only contractor preforming

the work at, the Ingram project. Plaintiff also asserted that the court failed to address the opinion of his retained expert witness and that, under section 414, defendant need not control every aspect of plaintiff's work to trigger a duty. Plaintiff did not assert any argument regarding his negligence claim based on section 343 of the Restatement.

¶ 58     The circuit court denied plaintiff's motion to reconsider. In its written order, the court concluded that plaintiff failed to present new evidence or arguments that compelled the court to disturb its previous ruling, noting that the Illinois Roofing Act sets forth roofer's licensing requirements and construction standards and does not set forth relevant safety regulations or guidelines. This appeal followed.

¶ 59                                    II. ANALYSIS

¶ 60     On appeal, plaintiff asserts that the circuit court erred when it granted summary judgment in favor of defendant. It argues that there were genuine issues of material fact as to whether defendant had control over plaintiff's work and whether defendant had notice that the subcontractors did not wear fall protection when working on garage roofs. He argues, therefore, that there is a genuine issue of material fact as to whether defendant is directly liable to plaintiff under section 414 of the Restatement (Second) of Torts. Plaintiff also contends that a genuine issue of material fact exists as to whether defendant is liable to plaintiff under section 343 of the Restatement (Second) of Torts.

¶ 61     Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). To determine whether a genuine issue of material fact exists, we construe these materials strictly against the moving party and liberally in favor of the opponent. *Carney v.*

16

*Union Pacific Railroad Co.*, 2016 IL 118984, ¶ 25. Although a plaintiff is not required to prove

his case at the summary judgment proceeding, he must present some evidentiary facts to support

each element of the cause of action. *Connaghan v. Caplice*, 325 Ill. App. 3d 245, 248 (2001).

Our review of a circuit court's ruling on a motion for summary judgment is *de novo*. *Clark*

*Investments, Inc. v. Airstream, Inc.*, 399 Ill. App. 3d 209, 213 (2010).  We may affirm a circuit

court's summary judgment ruling for any reason that is supported by the record. *Lee v. Six Flags*

*Theme Parks, Inc.*, 2014 IL App (1st) 130771, ¶ 62.

¶ 62                              Restatement (Second) of Torts § 414 (1965)

¶ 63    To state a claim of negligence based under section 414 of the Restatement, as here, "a

plaintiff must allege that the defendant owed him a duty, breached that duty, and that the breach

of the duty was the proximate cause of his injury." *Calderon v. Residential Homes of America,*

*Inc.*, 381 Ill. App. 3d 333, 340 (2008).

¶ 64    As an initial matter, "section 414 addresses the duty that an employer owes 'to others,'

for example, employees of the independent contractor and other third parties." *Connaghan*, 325

Ill. App. 3d at 249. This section does not impose "a duty upon employers that inures to an

independent contractor." *Id*.

¶ 65    Here, we conclude that section 414 does not apply to plaintiff because the record shows

that he was an independent contractor. Plaintiff stated in his first amended complaint that he was

an independent contractor retained by defendant to perform roofing work. Kholiava testified that

defendant did not have any employees, that it hired independent contractors for its jobs, and that

it hired four subcontractors, including plaintiff, for the roofing work at the Ingram project.

Further, in plaintiff's affidavit attached to his motion to dismiss U.S. Exterior's third-party

complaint for contribution, plaintiff averred that defendant retained him for the Ingram project in

his individual capacity and that, from March 2015 through July 16, 2015, he was a sole proprietor performing roofing work under the trade name "Kris Ozog Construction." Accordingly, because the record shows that plaintiff was an independent contractor, section 414 does not apply. See *id.* (affirming summary judgment in favor of the defendant on the plaintiff's section 414 claim, finding that the record did not show that the plaintiff was anything but an independent contracting and concluding that "[b]ecause section 414 does not contemplate a duty an employer owes to an independent contractor, this section of the Restatement is not applicable here"). Thus, the circuit court properly granted summary judgment on plaintiff's claim under section 414.

¶ 66     Nevertheless, even if we would assume that section 414 applied, we would still affirm because the record shows that defendant did not exercise sufficient control over plaintiff's work to owe him a duty under section 414. The issue of whether defendant owed a duty to plaintiff is a question of law, which we review *de novo. Carney,* 2016 IL 118984, ¶ 26.

¶ 67     Generally, an employer of an independent contractor is not liable for the acts or omissions of the independent contractor. *Lee*, 2014 IL App (1st) 130771, ¶ 66. "This is because one who hires an independent contractor usually does not supervise the details of the contractor's work and is therefore not in a good position to prevent the contractor from acting negligently." *Madden v. Paschen*, 395 Ill. App. 3d 362, 381 (2009). Rather, "the party in control—the independent contractor—is the proper party to be charged with that responsibility and bear the risk." *LePretre v. Lend Lease (US) Construction, Inc.*, 2017 IL App (1st) 162320, ¶ 26. However, under section 414, an employer of an independent contractor may still be liable for an independent contractor's injuries if the employer retains "some control" over the independent

contractor. *LePretre*, 2017 IL App (1st) 162320, ¶ 26. As previously stated, section 414 states as follows:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

Comment c to section 414 discusses when the rule applies to an employer:

> "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414 cmt. c (1965); *Carney*, 2016 IL 118984, ¶ 46.

¶ 68 Under section 414, an employer's "general right to enforce safety does not amount to retained control." *LePretre,* 2017 IL App (1st) 162320, ¶ 33. Further, the existence of a safety program, safety manual, or safety director is also insufficient to trigger liability under the section. *Madden*, 395 Ill. App. 3d at 382. Rather, under section 414, "[t]here must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Id.* (quoting Restatement (Second) of Torts § 414, Comment c (1965)). "The best indicator

of whether the defendant retained control sufficient to trigger the potential for liability under section 414 is the written agreement between the defendant and the contractor." *Carney*, 2016 IL 118984, ¶ 41. However, even if an agreement does not provide evidence of retained control by a defendant, evidence of an employer's conduct may demonstrate retained control. *LePretre, Inc.*, 2017 IL App (1st) 162320, ¶ 30. "The issue of a defendant's retained control may be decided as a matter of law when the evidence is insufficient to create a factual question." *Carney*, 2016 IL 118984, ¶ 41.

¶ 69     We conclude that the evidence is insufficient to create a factual question as to the issue of defendant's retrained control. The evidence shows that defendant did not retain sufficient control over plaintiff's work to trigger liability under section 414. There was no written agreement between defendant and plaintiff, so there is no contractual language demonstrating that defendant retained sufficient control over plaintiff's work.

¶ 70     Further, from our review of the deposition testimony, we find that defendant did not retain sufficient control over plaintiff's work through its conduct such that plaintiff was not entirely free to do the work in his own way. The record shows that defendant did not give plaintiff special instructions for the Ingram project. Kholiava testified that he did not give plaintiff any special instructions and plaintiff acknowledged he did not need special instructions or supervision on the project. Plaintiff testified that the shingle installation process was simple, and he already knew how to do it. The other subcontractors similarly testified that defendant did not provide them with specific instructions on how to perform the work at the Ingram project and that they were responsible for, and supervised, themselves. In addition, defendant was not at the job site on the date of the accident and, therefore, had no knowledge regarding what portion of the roof the contractors were working on that date, that it had rained, or that plaintiff was not

wearing safety equipment that day. See *Carney*, 2016 IL 118984, ¶¶ 54, 62 (affirming summary judgment on the plaintiff's section 414 claim, noting that the employees of the plaintiff testified that they did not receive special instructions from the defendant and that the defendant was not even present at the job site on the date of the accident).

¶ 71    In addition, Kholiava testified that the means and methods of how the subcontractors performed the work was up to them and that they were entirely free to do the work in their own way. The other subcontractors' testimony supports Kholiava's testimony, as Bak testified that the subcontractors decided the actual methods for the shingle installation and Kulikowski testified that the subcontractors were free to perform the methods as they saw fit.

¶ 72    Moreover, defendant did not provide any safety instructions, safety manuals, a safety director, or hold safety meetings at the Ingram project. Although Kholiava provided safety equipment at job sites and testified that, he expected his subcontractors to wear safety equipment and follow safety rules, including OSHA regulations, the "general right to enforce safety, does not amount to retained control under section 414." *Carney*, 2016 IL 118984, ¶ 47. Further, the deposition testimonies show that defendant informed the subcontractors that safety was their responsibility. Kholiava testified that in his first meeting with plaintiff, he told him that safety was his responsibility. The other subcontractors supported Kholiava's testimony, as Bak testified that he understood that he was responsible for his own safety and it was his decision when to use and wear safety equipment. Ohirko testified that it was up to him to decide whether he was going to follow any of defendant's safety suggestions. Kulikowski and Ohirko testified that the decision of whether to wear fall protection was up to each subcontractor.

¶ 73    In addition, the record shows that, on the date of the accident, plaintiff and the subcontractors were in control of their own decisions. Plaintiff did not wear safety equipment

when he returned to the roof after it rained. Plaintiff acknowledged that nothing prevented him from wearing safety equipment and it was his decision whether to wear the equipment. As previously discussed, Kulikowski and Ohirko similarly testified that the decision of when to wear fall protection was up to each subcontractor. Plaintiff also testified that he knew the risks of rain and that, if he did not wear safety equipment, there was a risk that he could fall. Plaintiff acknowledged that no one forced him to get back on the roof after it had rained and that the subcontractors made that decision together. According to Ohirko, on the date of the accident, Ohirko and defendant made the decision to get back on the roof after it rained. Bak testified that a decision regarding whether the subcontractors felt it was safe to work based on rain or any other condition was entirely their decision. Kholiava testified that he never told any subcontractor to keep working when it rained. Accordingly, based on our review of the record, we find the evidence shows that defendant did not retain sufficient control over plaintiff's work such that plaintiff was not entirely free to do the work in his own way.

¶ 74    To support plaintiff's argument that defendant retained sufficient control under section 414, plaintiff refers to the subcontractors' testimony regarding previous jobs with defendant. He asserts that, on previous jobs, Kholiava would inspect and check the quality of the work and would ask them to change something. However, a general right to inspect a contractor's progress or to prescribe alterations (*Carney*, 2016 IL 118984, ¶ 46) or to stop work (*Calderon*, 381 Ill. App. 3d at 344) is insufficient to trigger liability under section 414. Further, although Kholiava testified that defendant expected the subcontractors to complete the work in a workmanlike manner and to follow the manufacturer's specifications, the requirement that a contractor work in a workmanlike manner is a general right reserved to an employer who employs a contractor and

is not evidence that the employer retained control over the manner of a plaintiff's work. *Carney*, 2016 IL 118984, ¶ 46.

¶ 75    Plaintiff also cites to the subcontractors' testimony regarding the facts that Kholiava would recommend that they wear safety equipment to avoid getting cited by OSHA and that defendant provided safety equipment at the job sites. Plaintiff also refers to Bak's testimony that, at one previous job site, Kholiava came to a job site and told the subcontractors to wear harnesses. However, as previously discussed, defendant's "general right to enforce safety, does not amount to retained control under section 414." *Carney*, 2016 IL 118984, ¶ 47; *Connaghan*, 325 Ill. App. 3d at 250 (concluding that the deposition testimony that showed that the defendant had "the right to stop the work, tell the contractors to be careful, and change the way something was being done if he felt something was unsafe" did not establish sufficient control to trigger a duty under section 414).

¶ 76    Plaintiff also argues that evidence of control is shown by the fact that defendant provided the materials and large tools. However, the record shows that U.S. Exterior, the general contractor on the Ingram project, ordered and paid for the materials and that U.S. Exterior expected defendant to use the materials that it ordered and sent to the job site. With respect to the large equipment, the fact that defendant provided large equipment, including trash bins, ladders, and the machine that carried the shingles to the roof, does not show that defendant retained sufficient control over plaintiff's work such that plaintiff and the other subcontractors were not entirely free to do the work in their own way. See *Connaghan*, 325 Ill. App. 3d at 250 (affirming summary judgment in favor of the defendant on a section 414 claim when there was nothing to suggest that the plaintiff was not entirely free to perform the work in the manner he chose, noting that the fact that the defendant provided a ladder was insufficient to establish retained control).

Further, plaintiff brought his own small tools to the job site. Accordingly, we are unpersuaded by plaintiff's assertion that defendant retained control over the manner of plaintiff's work because it provided large equipment.

¶ 77    Plaintiff claims that defendant's control over plaintiff's work is supported by the fact that defendant had the subcontractors' watch safety videos after the accident. However, the deposition testimony shows that defendant had the subcontractors watch the videos to make sure they knew the requirements in order to avoid another accident, which is insufficient to establish a duty under section 414. See *Carney*, 2016 IL 118984, ¶¶ 58-61 (concluding that the defendant's post-accident conduct showed that it sought to avoid another accident, which was insufficient to establish a duty under section 414). "To hold otherwise would penalize a defendant's safety efforts by creating, in effect, strict liability for personal injury to any job site employee." *Id.* ¶ 61.

¶ 78    Plaintiff asserts that his retained expert, Gregory H. Pestine, "testified that [defendant] was in charge of the work" and then recites Pestine's report, which he attached to his response to defendant's motion for summary judgment. As an initial matter, we note that, in plaintiff's response to defendant's motion for summary judgment, he stated in his facts section that he retained Pestine, who "opined that Bee Quality was a controlling contractor on Ingram and Bee Quality violated industry standards, OSHA, and manufacturer's instructions for requiring fall protection on the subject garage." In plaintiff's argument section, he did not provide further argument on the expert's opinion. Plaintiff subsequently argued in his motion to reconsider that the trial court failed to consider his expert. Given that the record does not show that there is genuine issue of material fact or support that defendant retained sufficient control over plaintiff's work such that plaintiff was not entirely free to perform the work in his own way, we cannot find that plaintiff's expert opinion raised a genuine issue of material fact regarding whether defendant

retained sufficient control over plaintiff's work under section 414. See *Gerasi v. Gilbane Building Co., Inc.*, 2017 IL App (1st) 133000, ¶ 65 (where the plaintiff argued that the trial court erred in refusing to consider expert testimony that he did not provide the court until after it granted summary judgment in favor of the defendant, the court concluded that, because there were no genuine issues of material fact, "no expert opinion could have supplied the missing essential elements of the [plaintiff's] claim"). Thus, we are unpersuaded by plaintiff's assertion that summary judgment was improper because his expert testified that defendant was in charge of the work.

¶ 79    Plaintiff lastly asserts that there was evidence that defendant had notice that plaintiff and the subcontractors did not wear safety equipment when working on the garage roof such that it is liable under section 414. A precondition to direct liability under section 414 is that the general contractor must have either actual or constructive knowledge of the unsafe work methods or dangerous condition. *Calderon*, 381 Ill. App. 3d at 347.

¶ 80    The evidence does not show that defendant had actual or constructive knowledge that plaintiff was not wearing safety equipment on the garage roof or that there was a dangerous condition at the project. Rather, the record shows that defendant was not present on the date of the accident and did not have knowledge regarding which portion the roofers were working on that date, that it had rained, that plaintiff decided to return to the garage roof within an hour after the rain, or that plaintiff returned to the roof without wearing or using safety equipment. Further, plaintiff testified that he never made any complaints about safety concerns at the Ingram project and that he did not identify any safety hazards there. Bak likewise testified that none of the subcontractors made complaints about any unsafe conditions at the Ingram project. In addition, as previously discussed, plaintiff acknowledged that it was his decision whether to wear safety

equipment and nothing prevented him from wearing it. Plaintiff testified he knew the risks of rain and he made that decision to get back on the roof after it rained with the other subcontractors. Accordingly, based on this record, there is no evidence that defendant knew or should have known that on the date of the accident that plaintiff was working on the garage roof after it rained without the proper safety equipment.

¶ 81    In sum, we conclude that the deposition testimony showed that defendant did not retain sufficient control over plaintiff's work such that plaintiff was not free to do his work in his own way. Thus, the evidence does not raise a question of fact regarding whether defendant had sufficient control under section 414 such that it owed a duty to plaintiff. The circuit court's order granting summary judgment in favor of defendant on plaintiff's claim under section 414 was therefore proper.

¶ 82                    Restatement (Second) of Torts § 343 (1965)

¶ 83    Plaintiff next contends that the circuit court erred in granting defendant's motion for summary judgment because there exists a genuine issue of material fact as to whether defendant is liable to plaintiff under section 343 of the Restatement (Second) of Torts. He asserts that defendant was a possessor of the land. He claims that defendant knew from experience that the subcontractors did not wear safety equipment and that it allowed them to work on the roofs without the equipment.

¶ 84    Initially, we note that defendant asserts that plaintiff forfeited argument on this issue because he failed to raise the argument in his motion to reconsider. However, in a nonjury civil case, as here, the "failure to raise an issue in a posttrial motion does not preclude a party from raising that issue on appeal." *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 12. Thus, even though plaintiff did not argue in his motion to reconsider that the court erred in granting

26

defendant's motion for summary judgement with respect to his claim under section 343, we will review plaintiff's argument.

¶ 85    Section 343 of the Restatement "imposes liability upon a possessor of land for injuries to an invitee caused by the possessor's failure to exercise reasonable care in protecting the invitee from a dangerous 'condition on the land.' " *Cain v. Joe Contarino, Inc.*, 2014 IL App (2d) 130482, ¶ 9 (quoting Restatement (Second) of Torts § 343 (1965)). To be liable under section 343, a defendant must be a possessor of land. *Madden*, 395 Ill. App. 3d at 375. Section 343 defines the term "possessor" as "a person who is in occupation of the land with intent to control it." Restatement (Second) of Torts § 328E(a) (1965); *Madden*, 395 Ill. App. 3d at 375. The two requirements for possession are occupation and intent to control the land, "as opposed to the individuals or activities thereon." *O'Connell v. Turner Construction Company,* 409 Ill. App. 3d 819, 824-25 (2011). "The concept of 'control' is closely tied with the ability to exclude people from the use of a piece of property or to direct how that property is to be used." *Williams v. Sebert Landscape Co.*, 407 Ill. App. 3d 753, 756 (2011).

¶ 86    The record shows that defendant did not have intent to control the subject property. There is no evidence to suggest that defendant had physical control over the land or the intent to exclude people from it. Svenson owned the subject property and testified that he entered a contract with the general contractor, U.S. Exterior, for the roofing work and that he did not intend to let any contractor own or possess his home. U.S. Exterior ordered and paid for the materials from the project. Kholiava testified that defendant did not own the property at the Ingram project and had no intention to possess the job site or exclude people from it. Defendant did not direct how the property was to be used or install any fencing or barriers to exclude people from it.  Further, defendant was not present at the subject property on the date of the accident and

did not know what portion of the roof the subcontractors were working on that day. Accordingly, the evidence does not show defendant controlled or intended to control the premises, as opposed to the activities or individuals on it. Thus, the facts do not raise a question of fact regarding whether defendant was a possessor of the land under section 343. Because plaintiff did not present evidence to show that defendant was a possessor of the land, defendant is not liable under section 343 and summary judgment was proper.

¶ 87    Even if we would conclude that defendant was a possessor of the land, we would still find that defendant did not owe a duty to plaintiff. Under section 343, "[a] possessor of land can be liable for physical harm caused to his invitees by a dangerous condition on the land *if* the defendant knew or should have known that the condition involved a reasonable risk of harm." (Emphasis in original.) *Wilkerson v. Paul H. Schwendener, Inc.*, 379 Ill. App. 3d 491, 497 (2008) (citing Restatement (Second) of Torts § 343 (1965)).  "The possessor of land, however, will not be liable where there is no evidence of such knowledge." *Lee*, 2014 IL App (1st) 130771, ¶ 109.

¶ 88    Here, as previously discussed, the record does not establish that defendant had actual or constructive notice of a dangerous condition at the Ingram project. Thus, the circuit court did not err in granting defendant's motion for summary judgment on plaintiff's premises liability claim under section 343.

¶ 89    We note that, in plaintiff's opening brief, he cites Restatement (Second) of Torts § 383 (1965), stating that "a person may conduct activities on a land or be in charge of the land without being the possessor." Section 383 of the Restatement states: "One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, for physical harm caused thereby to others upon the outside of the land as though he were the possessor of the land." Restatement (Second) of Torts § 383. Defendant responds that plaintiff never raised

section 383 in the circuit court. In plaintiff's reply brief, he asserts that he is not relying on section 383. Thus, we need not address section 383.

¶ 90                                Illinois Roofing Act

¶ 91    Plaintiff lastly argues that summary judgment in defendant's favor was improper because the oral subcontract between defendant and plaintiff violated Illinois law, including the Illinois Roofing Act (225 ILCS 335/1 *et seq.* (West 2018)), and was void such that defendant was in control of safety at the Ingram project and was vicariously liable. Defendant responds that plaintiff did not raise the argument in his motion to reconsider and that, therefore, plaintiff "waived" the argument.

¶ 92    "The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law." *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶ 36. "Arguments raised for the first time in a motion for reconsideration in the circuit court are forfeited on appeal." *Evanston Ins.*, 2014 IL 114271, ¶ 36. Here, plaintiff did not raise any argument regarding the Illinois Roofing Act until his motion to reconsider. Therefore, plaintiff has forfeited his argument.

¶ 93                                III. CONCLUSION

¶ 94    In sum, we affirm the circuit court's decision granting defendant's motion for summary judgment.

¶ 95    Affirmed.